HAMITER, Justice.
 

 In these consolidated suits, docketed in this court under a single number, the plaintiffs, as owners of mineral rights, seek damages' allegedly resulting from a geophysical trespass admittedly committed by agents of the defendant. Their rights, totaling 1163.5 mineral acres, are in and to portions of a large tract of land of approximately 2098 acres located in Calcasieu Parish and known as the Gibson Farm. The Layne Louisiana Company .owns that tract of land, subject to outstanding mineral rights on 1363.5 acres, including those of the plaintiffs herein.
 

 The trespass occurred in August, 1944, when defendant’s agents, without securing permission to do so, entered the Gibson Farm (it is enclosed by a strong fence) after breaking a lock on one of its principal gates' and made a thorough geophysical survey thereof, exploring at numerous points completely around the premises.
 

 Thereafter the Layne Louisiana Company sued defendant for damages caused by the trespass and recovered judgment in the district court for $6297.50. Of this amount $3672.50 was for the value of the exploration rights wrongfully exercised by defendant, being $5.00 for each of the 734.5 mineral acres owned by that claimant. The remainder of the award was for damage to the land itself and for loss of cattle permitted to escape. On appeal to this court the judgment was affirmed on March 18, 1946. See Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 26 So.2d 20.
 

 The same trespass forms the basis of the present suits in which the. respective
 
 *687
 
 plaintiffs, who were not parties to the Layne Louisiana Company litigation, allege damage to their mineral interests (totaling 1163.5 mineral acres) as follows: (1) value of exploration rights wrongfully exercised and information illegally taken, $5.00 per acre; and (2) loss of-value for mineral leasing purposes, $10.00 per acre.
 

 The district court, after trial, rejected the claim for the second item, obviously because the evidence adduced did not disclose that plaintiffs had been prevented from granting leases affecting their mineral interests as a result of the geophysical survey. It sustained plaintiffs’ claim for the first item, however, and rendered judgment in their favor for the total sum of $5817.50, this amount representing a value on the exploration rights of $5.00 per acre for the 1163.5 mineral acres which they owned in the aggregate.
 

 Defendant appealed from the judgment; and it contends here, to quote from the brief of its counsel, that the district court erred:
 

 “(a) In allowing plaintiffs damages in any amount; and in holding that as mineral right owners they were entitled to recover for a geophysical trespass on the land owned by another.
 

 “(b) In allowing damages based on alleged value of privilege exercised by defendant when there was no proof of any kind that damages were suffered by plaintiffs.
 

 “(c) In fixing damages based on the highest price paid by defendant for mineral leases affecting lands located several miles from the scene of the trespass.”
 

 As defense counsel point out, these plaintiffs do not own any part of the surface of the Gibson Farm on which the exploration work was performed and the trespass committed. The entirety of that surface belongs to the Layne Louisiana Company, the plaintiff in the previous litigation to which reference is made above. They do own, however, mineral rights throughout the greater part of the 2098 acre tract, having reserved them some years ago when selling the property; and attending their interests is the right to enter upon the land and explore fo.r and produce the oil, gas and other minerals that may lie thereunder. Furthermore, with respect to their mineral interests, which are distinguishable from mineral royalties, plaintiffs are necessary parties to the execution cf any oil and gas lease effective against the property and they are entitled to share in the bonus and the delay rentals payable under such a lease, as well as in any production resulting from it. In sum, theirs is a real right in the land. Gulf Refining Company of Louisiana v. Glassell, 186 La. 190, 171 So. 846; Vincent v. Bullock, 192 La. 1, 187 So. 35; St. Martin Land Company v. Pinckney et al., 212 La. 605, 33 So.2d 169. It constitutes incor poreal immovable property which may be protected and defended in the same manner as the ownership and possession of
 
 *689
 
 other immovable property. Act 205 of 1938; International Paper Company v. Louisiana Central Lumber Company et al., 202 La. 621, 12 So.2d 659. And every act that damages or depreciates that right gives rise to a cause of action against him who is responsible therefor. Civil Code Article 2315; McCoy v. Arkansas Natural Gas Company, 184 La. 101, 165 So. 632; Angelloz v. Humble Oil & Refining Company, 196 La. 604, 199 So. 656.
 

 Owning such a right in and to the Gibson Farm these plaintiffs were entitled to be paid proportionately for the privilege of exploring or making geophysical tests on the tract for oil and gas. According to John J. Doyle, a witness for defendant whose testimony is in the record of this case, payment is often made for a privilege of that kind, the average price in “wildcat” territory being fifty cents per acre for a six months’ exploration period and $1.00 per acre for one year. Therefore, it can be correctly said that when this defendant explored without authority the Gibson Farm, and obtained information regarding the minerals thereunder, it took from plaintiffs a property right valuable to them. And for this unauthorized and illegal taking, which constituted damage to their mineral interests, plaintiffs can recover. This conclusion is identical with that reached by us in the Layne Louisiana Company case.
 

 Of course, only compensatory, not punitive, damages are recoverable. And in determining the quantum much discretion is vested in the trial judge. Civil Code Article 1934; Angelloz v. Humble Oil & Refining Company, supra. In the instant case, as well as in the Layne Louisiana Company case, he concluded that $5.00 per mineral acre was the value of the exploration privilege illegally assumed by defendant. In arriving at this value he reasoned:
 

 “ * * * The defendant, according to the record, was willing and did pay as much as $5.00 an acre to some land owners for the privilege of making a geophysical survey upon their property. It is true that these particular tracts were not adjacent to the property in which we are interested at the present time; however, these tracts for which the defendant paid $5.00 an acre, were in the same block, that defendant then had and upon which defendant was operating.
 

 %
 
 iji
 
 %
 
 sfc *
 

 “The defendant could hardly be heard to say that it would not have paid, for the right to make a survey of the property in question, since it was willing to violate the law in order to secure the survey. We must, of necessity, consider that it was interested in that property as much as in any other property, and, since the maximum it had paid in the lease block was $5.00 per acre, therefore, it follows, in our opinion, that it would have been willing to pay $5.00 per acre to shoot this particular property.”
 

 
 *691
 
 In view of all of the facts and circumstances of the case, We can not say that the trial judge abused the discretion given him in fixing the quantum of damages.
 

 The lease block of defendant, to which the trial judge refers, consisted of thousands of acres within an area extending approximately eight miles from the Gibson Farm, some of the acreage lying adjacent to the property. With reference to the leases, according to a stipulation in the record, counsel for the litigants agreed:
 

 “The map filed by defendant in suit number 23,467 referred to as D-l therein and to be offered in this suit shows in yellow the leases that were acquired by the Superior Oil Company in the spring of 1944; the original consideration paid for these leases was one dollar per acre except as to the west sixty acres of the of NE1/4, as to the SE% of the NW%, and the SW^ of S.WJ4 of Section 20, and the SW^ of NW% of Section 21; Township 8 South, Range 8 West, as to which leases the original consideration was at the rate of five dollars per acre; that the leases for which one dollar per acre was paid as original consideration in the main provided an original term of six months before the accrual of a rental to maintain the lease in lieu of drilling operations, except that the lease from Quatre Parish Company for which one dollar per acre was paid gave an original term of one year, while the leases for which five dollars per acre was paid gave an original term of one year, except the lease affecting-the sixty acres in the N% of the NEJ4 of Section 20, which was for an original term of four months and five days, the term-spoken of being a term before drilling or an additional payment was required in order to maintain it in force; the primary terms of the leases being generally around five years during which they could be maintained by rentals; the leases in other respects being substantially in the usual commercial form; the first rental under the one dollar leases and in all of the leases dqe after the first original term were in the majority of cases five dollars per acre; and all of said leases had either been formally released by the defendant. Superior Oil Company or permitted by it to expire prior to the filing of these suits.”
 

 Also, the record shows that defendant held free exploration privileges on considerable acreage within its block, some of which adjoined the Gibson Farm on its west side.
 

 Considering then that defendant purchased its leases in 1944 and dropped them in 1945 (these suits were filed July 27, 1945), and also considering the free exploration privilege it had on other acreage, it is reasonable to assume, as the trial judge found, that the leases were obtained primarily for exploration purposes. Further, considering that .for some of the leases in the block it paid $5.00 per acre, and that, as the record discloses, the Gibson Farm lies closer to oil pro
 
 *693
 
 duction (the Gillis Field, only one and one-half miles away) than they, it can not be correctly said that a value of $5.00 per acre .for the privilege of exploring plaintiffs’ acreage is excessive.
 

 For the reasons assigned the judgments are affirmed.