No. 18,840.

W. B. Brice *v.* Lloyd L. Pugh, et al.

(354 P. [2d] 1024)

Decided August 2, 1960.   Rehearing denied September 12, 1960.

Messrs. Murphy & Morris, for plaintiff in error.

Messrs. THOMAS & THOMAS, for defendants in error.

*In Department.*

PER CURIAM.

THE parties are referred to here as they appeared in the trial court, where plaintiff in error was defendant and defendants in error were plaintiffs.

The facts are not in dispute and may be summarized as follows: Plaintiffs were owners of 3,280 acres of land in Kit Carson County, Colorado. On August 8, 1956, plaintiffs and defendant's agent entered into agreement for a mineral lease on the property and plaintiffs executed an oil and gas lease in favor of defendant, receiving in return a sixty day sight draft for $3,240 as a "bonus payment." The draft contained the following provision: "In case title is not acceptable, the payor shall not be liable in damages or for payment of this draft."

After receiving the lease and delivering the draft, defendant ordered from a local abstractor a "Memorandum of Title" to the subject property. This memorandum was prepared under date of August 13, 1956, and was mailed to defendant's Denver office and received there in due course. It revealed that, as to one 40 acre tract, the minerals had been reserved by a former owner, but such interest had been sold for taxes and purchased by plaintiffs, who would soon be eligible to apply for tax deed. The memorandum further stated:

"b. OIL AND GAS LEASES OF RECORD: 1. To John Latta DBA Granada Drilling Co., for 5 years from August 31, 1954, 376/257."

On September 18, 1956, defendant recorded the subject lease in Kit Carson County. Plaintiffs, on a date not shown by the record, deposited the sight draft with their own bank; it was dishonored and returned unpaid by the drawee bank. Apparently thereafter plaintiffs lost or

destroyed the draft; they made one unsuccessful effort to talk with defendant relative to the unpaid draft. On October 22, 1956, defendant recorded a release of the oil and gas lease.

This action was commenced by plaintiffs on the 23rd day of August, 1957. The allegations and admissions of the pleadings established facts substantially as set forth above. The plaintiffs contended that title to the property was not defective so as to justify defendant in rejecting it, and, if defects were material, defendant waived objection by recording the lease. Defendant contended that title to the property was not "acceptable" because of defects revealed by the title memorandum and that the recording of the lease was done mainly for defendant's protection to prevent another from securing such lease while defendant determined the status of title.

Trial to the court resulted in judgment for plaintiffs for $3,240, the amount of the draft. Defendant seeks review of the judgment by writ of error.

The trial court concluded as a matter of law: 1) that alleged title defects as revealed by the title memorandum did not constitute valid objections to the title, and 2) that if title was defective, defendant's act of recording the lease constituted a waiver of such defects. We will treat these points in the order mentioned.

1. *The question of title.* The title memorandum revealed that 40 mineral acres were not owned by plaintiffs; this fact was apparently revealed to defendant at the time the lease was given and the bonus payment of $1.00 per acre was reduced accordingly. The tax certificate held by plaintiffs to the additional 40 acres was not such a material defect, under the circumstances here, as to warrant the rejection of the entire lease by defendant. The lease to John Latta, covering the entire leasehold interest, was on its face still in force at the time the lease to defendant was executed by plaintiffs. When this lease was given by the plaintiffs to defendant, there was

an implied representation that the property was free of any other subsisting lease and plaintiffs were obligated to present a record title so showing. If the lease to John Latta had terminated for failure of the lessee to extend the same by payment of delay rentals, such fact did not appear of record by release or otherwise.

Plaintiffs' counsel argue that the Latta lease does not constitute a title defect; that the lease, in evidence, was an "unless" lease and expired automatically on March 1, 1955, unless the lessee had extended it by drilling or by payment of delay rentals. They cite, in support of this contention, *Kugel v. Young,* 132 Colo. 529, 291 P. (2d) 695, where it was held that a lease terminated automatically where the lessee failed to perform the conditions necessary to extend the same.

While the rule stated above is valid as between the lessor and lessee, it does not extend to a party who must rely on the record to determine status of the title. Unless the lease by its terms has expired or unless there is a showing of termination, as by release executed by the lessee, the lease may be presumed to be in force, and as such would constitute a valid objection by another prospective lessee.

Plaintiffs further argue that, even if title were defective, defendant is not excused from honoring his draft; that payment there called for is not "rent" but a "bonus" for the execution of the lease, regardless of whether the lease is good. We are not persuaded by this argument, nor have plaintiffs' counsel cited any authority distinguishing bonus payments from other forms of consideration for a lease. In contracting for the lease, defendant contemplated possible title defects and attempted to protect against them by withholding payment for a sixty day period, during which he could examine the title. The "quid pro quo" upon which he delivered his draft for $3,240 was a valid lease. The record of the Latta lease constitutes a material title defect which, in the absence of special circumstances, would

excuse defendant from accepting and paying for the lease.

2. *The question of waiver.* The defendant had a proper basis for rejecting the lease, plaintiffs' right to recover, if such exists, must rest on a waiver by defendant of such right.

The plaintiffs contend as a matter of law that defendant's act of recording the lease constituted such acceptance and that any objections to the title were thereby waived. Defendant contends that he recorded the lease merely to give notice of his interest while determining the nature of the lessors' title. The trial court apparently adopted plaintiffs' theory and held, as a matter of law, that the recording of the lease constituted an irrevocable acceptance.

As between the parties themselves, recording neither increased nor diminished their rights and obligations; each was fully informed of the terms and conditions of the execution and delivery of the lease. Since it does not appear that recording the lease was in any way prejudicial to the plaintiffs, and that the lease was subsequently released, we conclude that the recording must be considered, along with other conduct of the parties, as evidence bearing on the question of waiver.

Waiver is defined as "the intentional relinquishment of a known right." 56 Am. Jur. Waiver, 102. The plaintiffs, in asserting defendant had waived his right to reject the lease, had the burden of establishing by a preponderance of evidence elements to invoke the doctrine. Plaintiffs' counsel, in their brief, assert:

"The evidence in this matter shows that the defendant accepted the oil and gas lease, exercised dominion over it and gave notice to the general public of his interest in and to the land and real estate described therein and that acceptance of the title resulted in a waiver of the defendant's right to object to the title. The Court believed the plaintiffs and disbelieved the defendant."

We think the evidence was insufficient to estab-

lish waiver by defendant of his right to reject the lease. Recording alone is not, as a matter of law, an acceptance of title nor does it necessarily constitute "exercising dominion over" a lease.

The trial court's conclusion rests solely on the single act of recording the lease by defendant, since no other act or conduct of defendant is cited as evidence of an intent to surrender a known right. Other aspects of his conduct are consistent with his stated intent to reject the title — his refusal within the sixty day period to honor the draft and his subsequent releasing of the recorded lease. Moreover, that plaintiffs considered defendant had not waived his right to reject the lease is apparent from their conduct following dishonor of the draft. They did nothing further until commencing this action, in furtherance of their assertion that the lease was a subsisting one; they lost or destroyed the draft, and leased a part of the land to another.

Concluding, as we do, that the evidence fails to support the finding of the trial court, the judgment is reversed and the cause remanded with directions to dismiss the action.

MR. JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.