**Jack J. GRYNBERG, Petitioner,**

v.

**CITY OF NORTHGLENN, Sheaffer & Roland, Inc., Chen and Associates, Inc., and Arrow Drilling Company, Respondents.**

**No. 85SC117.**

Supreme Court of Colorado,
En Banc.

June 15, 1987.

Rehearing Denied July 20, 1987.

Welborn, Dufford, Brown & Tooley, Phillip D. Barber, Ellen Toll, Denver, for petitioner.

Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Gary E. Parish, Janet A. Savage, Denver, for respondent City of Northglenn.

Bender & Fryer, P.C., Stanley B. Bender, Denver, William H. Ebbert, Denver, for respondent Sheaffer & Roland, Inc.

No appearance for respondent Chen and Associates, Inc.

No appearance for respondent Arrow Drilling Co.

LOHR, Justice.

This case was brought by Jack J. Grynberg, the owner of a coal lease from the State of Colorado, claiming that his rights were violated when the City of Northglenn drilled a test hole within the lease boundaries without Grynberg's permission and disclosed the results of the test in a report filed in the public records of the state engineer. The test results showed an absence of commercially recoverable coal deposits. Northglenn had drilled the hole with the permission of the owner of the severed surface estate for the purpose of determining the suitability of the area as a site for a wastewater reservoir. The trial court granted summary judgment for defendant Northglenn and the other defendants, all of whom had participated in drilling the test

hole, based on the finding and conclusion that they had no actual or constructive notice of Grynberg's lease, which had not been recorded in the county real estate records, and that the defendants were entitled to the protection of Colorado's recording statute, section 38–35–109(1), 16A C.R.S. (1982). The Colorado Court of Appeals affirmed in *Grynberg v. City of Northglenn,* 703 P.2d 601 (Colo.App.1985). We granted certiorari and now reverse the judgment of the court of appeals and remand the case for further proceedings.

## I.

The relevant facts are established by documents in the record and are not in dispute. In late 1977, the City of Northglenn began a search for potential sites for a wastewater reservoir which would become part of a comprehensive wastewater treatment project. One of the sites selected was the West half of Section 36, Township 1 North, Range 68 West of the 6th P.M., in Weld County, Colorado (the site).

In order to assess the suitability of the site for construction of a reservoir, Northglenn made plans to drill test holes, including one deep hole to determine whether the site contained commercial deposits of coal. The exploration for coal deposits was to be accomplished to obtain information relevant to zoning and to securing the approval of the state engineer. *See* §§ 34–1–303, –305(1) and (2), 14 C.R.S. (1984) (prohibiting governmental zoning authorities in populous counties from permitting use of any area containing a commercial mineral deposit in a manner that would interfere with extraction of such deposit); §§ 37–87–105(1) and –117, 15 C.R.S. (1986 Supp.) (requiring state engineer's approval of engineering data and plans before certain dams may be constructed).

In order to ascertain the ownership of the site, Northglenn searched the Weld County records, including the records of the county clerk and recorder. This search revealed that the surface estate of the site was owned by a private corporation not a party to this lawsuit and that the severed mineral estate was owned by the State of Colorado. The search also disclosed that the State of Colorado had issued a coal lease to Clayton Coal Company (Clayton Coal), recorded June 6, 1975, that had a primary term of ten years and covered the site. Although the State of Colorado also had issued a coal lease to Jack J. Grynberg including the site together with the remainder of Section 36, Township 1 North, Range 68 West of the 6th P.M. (Section 36), dated July 13, 1977, for a primary term of ten years, that lease had not been recorded in the Weld County records. As a result, Northglenn's search did not disclose the existence of that lease. Northglenn had no actual knowledge of the existence of the Grynberg coal lease.

Prior to conducting any drilling, Northglenn contacted Clayton Coal and learned that it had assigned its coal lease to Adolph Coors Company (Coors). Northglenn then inquired of Coors and was informed that Coors had determined that any coal within the leasehold boundaries was not economically recoverable, and that Coors therefore had abandoned the coal lease.

In December 1977, Northglenn received a proposal for the sale of the surface estate from its owner. Following negotiations, Northglenn entered into an agreement to purchase the surface estate on March 3, 1978, and acquired that estate on June 1, 1978. In late February of 1978, during the course of the negotiations leading up to the sale, Northglenn obtained the permission of the surface owner and drilled test holes on the site. Northglenn never sought permission of the State of Colorado, the record owner of the mineral estate in the site, to accomplish the testing. Neither did Northglenn review the records pertaining to the site that were maintained in the office of the State Board of Land Commissioners. *See, e.g.,* §§ 36–1–101 and –110, 15 C.R.S. (1973) (concerning records to be kept of documents pertaining to state lands, and public nature of records).

The drilling conducted by Northglenn consisted of a number of shallow holes and one that was 600 feet deep. In performing this work defendant Sheaffer & Roland, Inc. acted as general contractor, defendant

Chen and Associates, Inc. (Chen) was the soils engineering consultant and supervised the drilling, and defendant Arrow Drilling Company drilled the holes. None of these companies had actual knowledge of the existence of the Grynberg lease during the times relevant to this litigation.

Chen prepared a preliminary engineering geology and soils investigation report based in part on information obtained from the deep test hole drilled on the site. The report stated that the hole was drilled to evaluate the extent of coal deposits in the area and concluded that "it is our opinion that the coal in Section 36 ... does not represent a potentially recoverable resource." Information in the report included the geologic and other data required by the state engineer in order to approve the proposed reservoir. On or about April 25, 1978, Chen filed the report in the state engineer's office where its contents became public information. The state engineer thereafter approved the plans and specifications for the proposed reservoir.

Northglenn first learned of the Grynberg lease when Grynberg contacted the city in mid-May of 1978 to express concern about the drilling activity on the property. Grynberg then brought suit against Northglenn, Sheaffer & Roland, Inc., Chen, and Arrow Drilling Company, based on theories of trespass, assumpsit, wrongful appropriation of geologic information, interference with prospective business advantage, and negligence. The asserted injury that provides the principal basis for all of these claims, directly or indirectly, is the loss of market value of Grynberg's coal lease as the result of the discovery and publication of information that the coal reserves on the property have no commercial value. The defendants filed answers and then moved for summary judgment.[1] Plaintiff Grynberg filed a cross-motion for partial summary judgment on certain issues of liability. The defendants filed numerous affidavits in support of their motions, and the deposition of Grynberg also was placed in the file.

The defendants argued in support of their summary judgment motions that they had no actual notice of the Grynberg lease and were not on constructive notice of that lease because it had not been recorded with the Weld County Clerk and Recorder. Therefore, they argued, under Colorado's recording act, section 38–35–109(1), 16A C.R.S. (1982), the Grynberg lease was not valid as to them. The district court agreed and also accepted the defendants' argument that they had no duty to examine the records in the office of the Colorado State Board of Land Commissioners in order to ascertain the status of title to the site. Although the district court acknowledged that Grynberg's lease was valid as to the State of Colorado, the court concluded that the lease was ineffective as to the defendants as a result of Grynberg's failure to record it in the county records. Consequently, the court ruled that Grynberg's claims, all of which were predicated on injury to his rights under the coal lease, must fail. Based on this analysis, the district court granted the defendants' motions for summary judgment and denied Grynberg's cross-motion for partial summary judgment.

Grynberg appealed, and the court of appeals affirmed the summary judgments. *Grynberg v. City of Northglenn*, 703 P.2d 601 (Colo.App.1985). That court held that the recording act by its own terms extends protection to "any class of persons with any kind of rights" and does not limit the persons protected to bona fide purchasers and encumbrancers. 703 P.2d at 602. The court also held that Northglenn obtained protected rights by securing permission to drill from the owner of the surface estate and ultimately purchasing the surface estate. *Id.* at 603. The court of appeals rejected the plaintiff's claim that Northglenn was on constructive notice of the records in the office of the Colorado State Board of Land Commissioners simply because the county records showed that the state was the record owner of the mineral

---

1. Chen did not file a motion for summary judgment. At the conclusion of the hearing on the other summary judgment motions, however, Chen was permitted by the court to make an oral motion for summary judgment. The court then granted that motion.

estate in the site. *Id.* Concluding that Northglenn was entitled to rely on the condition of title disclosed by the records of the county clerk and recorder, the court sustained the summary judgments. *Id.* Grynberg then petitioned for certiorari, and we granted that petition.

We first consider whether the owner of a surface estate in a parcel of land can authorize a third party's exploration of that land for minerals where the surface and mineral estates are severed and separately owned. Concluding that the owner of a surface estate can grant no such authorization, we then address the question of whether the owner of the mineral estate in that parcel of land can assert a cognizable legal claim based upon the third party's exploration for minerals without the mineral estate owner's consent. After answering that question in the affirmative, we consider whether in the present case the Colorado recording act, section 38–35–109(1), 16A C.R.S. (1982), insulates the defendants from liability for exploring the site for commercial deposits of coal without the consent of the State of Colorado as the mineral owner or Grynberg as the owner of a coal lease. We conclude that the recording act offers no such protection and therefore hold that the summary judgments for the defendants were in error and must be reversed.

## II.

It is well recognized that the surface and mineral estates in real property can be severed and separately owned. *E.g., Simson v. Langholf,* 133 Colo. 208, 293 P.2d 302 (1956); *Mitchell v. Espinosa,* 125 Colo. 267, 243 P.2d 412 (1952); *Calvat v. Juhan,* 119 Colo. 561, 206 P.2d 600 (1949); *Osborne v. Holford,* 40 Colo.App. 365, 575 P.2d 866 (1978). Separate ownership of the surface and mineral estates creates obvious tensions in attempting to assure full use of each estate without injuring the other. The broad principle by which these tensions are to be resolved is that each owner must have due regard for the rights of the other in making use of the estate in question. *See* 1A G. Thompson, *Real Property* § 164 (1980). The specific issue central to the resolution of the case now before us is whether the owner of a severed surface estate has the authority to grant permission to conduct drilling, a form of geologic testing, in order to explore for mineral deposits. This issue is critical because Northglenn relies entirely on permission from the surface owner to support the argument that its drilling activity was authorized.

### A.

■ Courts in modern times have had occasions to consider the accommodation of the respective rights of mineral and surface owners in consenting to exploration for minerals. Generally, it can now be said that whoever has authority to execute a mineral lease on the land may grant a geophysical exploration permit.[2] Brown, *Geophysical Trespass,* 3 Rocky Mtn.Min.L. Inst. 57, 59 (1957) (*"Brown"*). Where, as here, the surface estate has been severed from the mineral estate, "it is clear from the decided cases that the mineral owner, rather than the surface owner, is the one who has the right to conduct geological and geophysical operations." 1 E. Kuntz, *Law*

---

**2.** Geophysical exploration is described as "[t]he search for geologic structures favorable to the accumulation of petroleums by means of geophysical devices." H. Williams & C. Meyers, *Manual of Oil and Gas Terms* 318 (5th ed. 1981). Geophysical devices include gravity meters, magnetometers and seismographs. *Id.* Modern technology has further expanded the inventory of scientific devices used to accomplish geophysical exploration. Rice, *Wrongful Geophysical Exploration,* 44 Mont.L.Rev. 53 (1983). Although the geologic testing in the present case was conducted by core drilling and the object of the search was coal, not petroleum, the principles applicable to geologic testing are the same as those that apply to the broader category of testing procedures characterized as geophysical exploration. The essence of each type of exploration is the search for geologic information concerning the existence of a valuable natural resource. In the case of core drilling, the issue is somewhat simplified by the fact that this exploration method necessarily involves entry onto the land in question, whereas some types of geophysical exploration can be conducted from locations outside the boundaries of the property explored. *See, e.g., id.*

*of Oil and Gas* § 12.7, at 280–81 (1962). *Accord Phillips Petroleum Company v. Cowden*, 241 F.2d 586, 590–92 (5th Cir. 1957); *Ohio Oil Co. v. Sharp*, 135 F.2d 303, 308 (10th Cir.1943); *Holcombe v. Superior Oil Co.*, 213 La. 684, 35 So.2d 457, 458 (1948); *Brown* at 60; Rice, *Wrongful Geophysical Exploration*, 44 Mont.L.Rev. 53, 56 (1983). The recognition of the exclusivity of the right of the mineral owner to consent to such exploration is based upon the central importance of information concerning mineral deposits to the value of the mineral estate. *See, e.g., Phillips*, 241 F.2d at 590; 1 E. Kuntz, *Law of Oil and Gas* § 12.7, at 281 (1962). We conclude, therefore, that the permission obtained by Northglenn from the owner of the surface estate was insufficient to authorize Northglenn to drill in search of mineral deposits,[3] unless the relevant Colorado statutes have altered this result. We next consider those statutes.

### B.

The defendants rely on Colorado's geological survey act, sections 34–1–301 to –305, 14 C.R.S. (1984), in support of their position that the owner of the surface estate can grant permission to conduct exploratory drilling to determine the existence and extent of coal deposits. That act provides that regulation of commercial mineral deposits, the preservation of access to and extraction of such deposits, and the development of a rational plan for extraction of commercial mineral deposits, in the populous counties of the state—of which Weld County is one—are matters of concern because these resources are essential and in short supply. § 34–1–301. The act also provides that the Colorado geological survey shall contract for a study of commercial mineral deposits in the populous counties in order to identify and locate such deposits. § 34–1–303. It requires each county planning commission in populous counties to study commercial mineral deposits and develop master plans for extraction of such deposits, which in turn are to be considered and ultimately adopted by each board of county commissioners. § 34–1–304. County governmental authorities are forbidden to zone, rezone, grant a variance or in any way to prevent the use of any area known to contain a commercial mineral deposit in a manner that would interfere with the present or future extraction of such deposit by an "extractor." § 34–1–305(1), (2).

The defendants argue that the geological survey act reflects the policy of the state in favor of public acquisition of information regarding the nature and location of coal and other commercial mineral deposits in populous counties such as Weld County. Northglenn contends in its brief that "the Act establishes a public policy that information concerning coal deposits in the populous counties of the State is not an exclusive property right of the mineral owner, at least as against county zoning boards and those who wish to make a lawful use of their surface estates." In its order granting summary judgment for the defendants, the trial court noted this statute and the need that it creates for surface owners to ascertain the existence of commercial quantities of minerals in order to determine the suitability of land for intended uses of the surface.

Additionally, the defendants point to the requirements of sections 37–87–105 and –117, 15 C.R.S. (1973), that approval of the state engineer must be obtained for plans and specifications of larger dams and reservoirs such as the ones planned by Northglenn, and that in order to secure such approval the owner must submit sufficient engineering data to show the "character of the foundation, and of the materials available for construction purposes." § 37–87–117. The record reflects that geologic information is included among the data required by the state engineer.

---

**3.** Northglenn did not seek permission from the State of Colorado, the record owner of the mineral estate as disclosed by the records in the clerk and recorder's office in Weld County. In oral argument before this court Northglenn confirmed that it does not assert that it derived any rights from Clayton Coal or from Coors, which had abandoned the coal lease that it had obtained by unrecorded assignment from Clayton Coal.

■ The foregoing statutes were in effect when the Grynberg lease was executed. The defendants assert that the effect of the statutes is to require that the information necessary to implement them be shared by the mineral owner with the owner of the surface estate. We cannot read so much into the statutes.

The geological survey act does contemplate governmental studies to identify and locate commercial mineral deposits. It makes no provision, however, for geologic testing by the owner of the surface estate without the consent of the mineral owner. Similarly, although the requirements of sections 37–87–105 and –117 for state engineer approval of dams and reservoirs include the submission of engineering data in support of such applications, nothing in those statutes purports to grant to a surface owner the right as against the mineral owner to conduct tests and gather information concerning the existence and extent of commercial mineral deposits without the consent of the owner of the mineral estate.

In summary, we find nothing in the statutes cited that persuades us that the legislature intended to alter the rights of the owner of a mineral estate with respect to the owner of a surface estate in such an important way. Absent a clear indication of such a legislative purpose, we decline to construe the statutes to effect such a fundamental reallocation of the rights of the owners of these estates.[4]

### III.

It is undisputed that Northglenn did explore the site for coal deposits, and that such exploration was without the consent of either Grynberg as the owner of the coal leasehold interest or the State of Colorado as the owner of the mineral estate.[5] Grynberg contends that Northglenn's actions, as pleaded, invaded his rights as lessee. We agree.

The issue of the right of the owner of a mineral estate or the lessee of such a mineral interest to complain of unauthorized geologic exploration has not yet been addressed by this court. However, several other jurisdictions have allowed recovery for damages incurred due to an unauthorized geophysical exploration, and a tort often characterized as geophysical trespass [6] appears to be well established. *See Tinsley v. Seismic Explorations, Inc.*, 239 La. 23, 117 So.2d 897 (1960); *Wilson v. Texas Co.*, 237 S.W.2d 649 (Tex. Civ. App. 1951); *Ready v. Texaco, Inc.*, 410 P.2d 983 (Wyo. 1966); R. Hemingway, *Law of Oil and Gas* §§ 4.1, 4.2 (2d ed. 1983); 1 E. Kuntz, *Law of Oil and Gas* § 12.7 (1962); 4 W. Summers, *Law of Oil and Gas* §§ 659–60 (1962); 1 H. Williams & C. Meyers, *Oil and Gas Law* § 230 (1986); *Brown*

---

4. In reaching this result, we express no opinion on the authority of the legislature to require the owner of a mineral estate to permit the surface estate owner to explore for minerals in order to assure the suitability of land as a site for a planned activity or structure. Nor do we express any view of the scope of the authority of the geological survey in making studies of commercial mineral deposits as required by the geological survey act.

5. In the present case there remains a question whether the State of Colorado as owner of the mineral estate had joint authority with Grynberg to give permission for geologic testing of the property for coal or whether that authority was vested exclusively in Grynberg as lessee. The resolution of that issue is dependent upon the terms of the lease. *See Brown* at 61–62; R. Hemingway, *Law of Oil and Gas* § 4.1 (2d ed. 1983). It is undisputed that Northglenn did not obtain or seek permission to conduct geologic exploration from either the State of Colorado or Grynberg. Therefore, it is unnecessary to determine whether the state could have given permission for the testing.

6. In Rice, *Wrongful Geophysical Exploration,* 44 Mont.L.Rev. 53 (1983), it is argued that the tort should be recognized as a new one, wrongful appropriation of the right to explore, and that traditional legal theories such as trespass or conversion do not logically or historically fit this new tort. *Id.* at 53. One reason that the trespass theory is not always apt is that unauthorized geophysical exploration does not necessarily involve physical entry. Nevertheless, judges and commentators commonly use the term "geophysical trespass" as a rubric for this invasion of the right to explore for minerals. In the present case, the plaintiff asserts claims based on several different theories, including trespass. We consider it prudent to leave for the district court the determination of which, if any, of the plaintiff's theories of recovery are appropriate under the facts of this case.

at 62–70; Rice, *Wrongful Geophysical Exploration,* 44 Mont.L.Rev. 53 (1983).

[A] geophysical trespasser [is] 'one who conducts geophysical operations upon the lands of another without permission or consent. Such an explorer may also be deemed a trespasser where the consent or permission obtained is for any reason ineffectual, or where the operations conducted are in excess of the consent or permission granted.'

*Brown* at 62–63 (quoting Hawkins, *The Geophysical Trespasser and Negligent Geophysical Explorer,* 29 Tex.L.Rev. 310, 314 (1951)). The reasons for recognizing unauthorized exploration of mineral rights as an invasion of the interest of the mineral owner are well explained in *Layne Louisiana Co. v. Superior Oil Co.,* 209 La. 1014, 26 So.2d 20, 22 (1946), as follows:

It is a well-known and accepted fact in this, the third largest producing oil State, that the right to geophysically explore land for oil, gas or other minerals is a valuable right. Large sums of money are annually paid landowners for the mere right to go upon their land and make geophysical and seismograph tests. The information obtained as the result of such tests is highly valuable to the person or corporation by whom they are made. If the information thus obtained be favorable, it can be used and is used in dealing with the landowner for his valuable mineral rights. If the information be unfavorable, the fact quickly becomes publicly known and thus impairs the power of the landowner to deal advantageously with his valuable mineral rights. The average landowner is without means or funds to secure geophysical or seismograph information. Where that information, which is exclusively his by virtue of his ownership of the land, is unlawfully obtained by others, the landowner is clearly entitled to recover compensatory damages for the disregard of his property rights.

Although Northglenn did have the surface owner's permission to enter upon the land, it engaged in unauthorized geologic exploration contrary to the rights of the mineral interest holder and its lessee by drilling a test hole to determine the existence and extent of coal deposits. *See* 1 E. Kuntz, *Law of Oil and Gas* § 12.7 (1962).

## IV.

Northglenn argues that even if its drilling activities would otherwise have contravened Grynberg's rights as lessee under the coal lease, Grynberg's claims are defeated by his failure to record that lease. We disagree. The Colorado recording statute, upon which this issue depends, provided at the times relevant to this case:

All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property ... may be recorded in the office of the county clerk and recorder of the county where such real property is situated, and no such instrument or document shall be valid as against any class of persons with any kind of rights, except between the parties thereto and such as have notice thereof, until the same is deposited with such county clerk and recorder....

§ 38–35–109(1), 16A C.R.S. (1982).[7]

There can be no doubt that a coal lease is an instrument in writing "affecting title to real property" and therefore is subject to the recording act. *Rocky Mountain Fuel Co. v. Clayton Coal Co.,* 110 Colo. 334, 340, 134 P.2d 1062, 1066 (1943). *See Page v. Fees-Krey, Inc.,* 617 P.2d 1188 (Colo. 1980) (oil and gas lease); *Brice v. Pugh,* 143 Colo. 508, 354 P.2d 1024 (1960) (oil and gas lease). Therefore, until it is recorded, such a lease is not valid as against "any class of persons with any kind of rights" except between the parties to the lease and those who have notice thereof. § 38–35–109(1), 16A C.R.S. (1982). Northglenn and the other defendants had no notice of the Grynberg coal lease. The critical question

7. In *Page v. Fees-Krey, Inc.,* 617 P.2d 1188, 1191 (Colo. 1980) (majority opinion), and 1200–01 (Rovira, J., dissenting), we held that this recording act was a pure notice statute. *See id.* at 1193 n. 7. The General Assembly amended the act in 1984 and provided explicitly that the amended statute is of the race-notice type. § 38–35–109(1), 16A C.R.S. (1986 Supp.).

then becomes whether the defendants are persons "with any kind of rights" in the context of the present dispute. We conclude that they are not.

As discussed in part II of this opinion, rights to conduct geologic testing for minerals can be derived only from or through the owner of the mineral estate. Northglenn obtained no permission to conduct testing from the State of Colorado or Grynberg, the only possible sources of such permission. The ownership of the mineral estate by the State of Colorado clearly appeared from the county clerk and recorder's records. Northglenn sought and obtained permission only from the owner of the severed surface estate. That owner had no ability to give effective consent to geologic testing and nothing in the county records suggested to the contrary. Therefore, since Northglenn obtained no right from anyone who could authorize geologic testing or who appeared from the county clerk and recorder's records to possess such right, we conclude that Northglenn and the other defendants did not possess "any kind of rights" with respect to geologic testing that would entitle them to the protection of the recording act.

We believe that the result we have reached is consistent with the purposes of the recording act. We have described the general purposes of recording acts to include the "protection for purchasers of real property against the risk of prior secret conveyances by the seller[,]" and have said that one purpose is to "permit a purchaser to rely on the condition of title as it appears of record." *Page v. Fees-Krey, Inc.,* 617 P.2d 1188, 1193 and 1193 n. 7 (Colo. 1980). *Accord Carmack v. Place,* 188 Colo. 303, 535 P.2d 197 (1975); *Hallett v. Alexander,* 50 Colo. 37, 43, 114 P. 490, 493 (1911) (construing an earlier recording act). *See* § 38–34–101, 16A C.R.S. (1982). *See also Eastwood v. Shedd,* 166 Colo. 136, 442 P.2d 423 (1968) (protection of the Colorado recording act was construed to include do-

nees as being persons with rights under the statute). Therefore, one entitled to protection under the recording act acquires rights that "are not measured by the actual interest of the seller in the land, but rather by his apparent interest[,]" as reflected by the real estate records. *Hallett v. Alexander,* 50 Colo. at 43, 114 P. at 493. The record in this case showed that the State of Colorado owned the mineral estate and that it had issued a coal lease to Clayton Coal. Northglenn's inquiries caused it to learn that the Clayton Coal lease had been abandoned by Coors, the assignee of Clayton Coal. As a result, the State of Colorado appeared from the record to be the proper source of permission for geologic testing. Northglenn never obtained or sought permission from the state to engage in testing for coal deposits. Therefore, to hold that Northglenn had "rights" protected by the recording act as against the owner of the mineral estate would do nothing to further the purposes of that act.

We agree with the statements made by the Louisiana Court of Appeals in rejecting an assertion of protection under a similar recording act advanced by one who did not act under any color of authority or permission granted by any record owner in conducting geophysical exploration on the lands in question:

> As we understand and appreciate the application of the public records doctrine, it is intended to protect those third parties by what they find or what they could have found in the public records. That is, one who deals with the record owner is protected vis-a-vis the true owner. However, we do not believe the public records doctrine was ever intended to protect one who did not deal with [the record owner] from the harm that he might have done.

*Sick v. Bendix-United Geophysical Corp.,* 341 So.2d 1308, 1312 (La.Ct.App.1976). *Accord* 1 R. Patton, *Land Titles* §§ 12, 13 (2d ed. 1957).[8]

8. Our resolution of this case makes it unnecessary to consider the plaintiff's argument that the defendants are on inquiry notice of the contents of the records of the State Board of Land Com-

missioners because the State of Colorado has a mineral interest of record and Section 36 is a school section. *See* Colorado Enabling Act §§ 7, 15, 16, 1A C.R.S. (1980); § 36–1–101, 15

V.

We hold that the trial court erred in granting summary judgment for the defendants. Grynberg invites us to go on to direct that summary judgment be entered in his favor determining that liability has been established with respect to the claims embraced in his motion for partial summary judgment. We decline this invitation. The trial court has not had an opportunity to delineate the elements of each of Grynberg's claims for relief or the extent to which factual issues relevant to those elements might remain unresolved. The possibility of the existence of affirmative defenses, such as governmental immunity, also remains unexplored. Additionally, our grant of certiorari was not sufficiently expansive to permit full consideration of all of Grynberg's claims for relief. Under these circumstances, we are persuaded that the interests of justice will be best served by returning this matter to the trial court for definition and resolution of all issues remaining unresolved as a result of our reversal of the summary judgments for the defendants.

The judgment of the court of appeals is reversed and the case is returned to that court for remand to the trial court with directions to conduct further proceedings consistent with the views set forth in this opinion.

C.R.S. (1973). We note, however, that nothing in *Page v. Fees-Krey, Inc.,* 617 P.2d 1188 (Colo. 1980), upon which the plaintiff relies, was intended to suggest a necessity to examine federal or state land records absent some apparent irregularity in the chain of title appearing in the records of the county clerk and recorder of the county in which the land is located. *See also Bolack v. Underwood,* 340 F.2d 816 (10th Cir. 1965); *Aye v. Fix,* 626 P.2d 1259 (Mont.1981); *Dame v. Mileski,* 340 P.2d 205 (Wyo.1959).