**PACIFIC ENTERPRISES OIL COMPANY, a California Corporation, Plaintiff–Appellee,**

v.

**Charles S. HERTZ, Defendant–Appellant.**

**No. 88–1765.**

United States Court of Appeals, Tenth Circuit.

Jan. 10, 1990.

---

Stephen H. Glickman (David A. Hickerson, of Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., with him on the briefs), of Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for defendant-appellant.

Robert C. Hawley (Kathleen M. Kulasza, of Hawley & VanderWerf, Denver, Colo., and William H. Everett, III, Gen. Counsel, Terra Resources, Inc., Tulsa, Okl., with him on the brief), of Hawley & VanderWerf, Denver, Colo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, TACHA, Circuit Judge, and WINDER, District Judge.[*]

TACHA, Circuit Judge.

This is an appeal from the district court's grant of summary judgment in favor of Terra Resources, Inc., which had initiated a declaratory judgment action to determine its rights and obligations under a contract to assign an oil and gas lease. We affirm.

## I.

Defendant Charles S. Hertz, a Pennsylvania resident, applied for an oil and gas lease under section 17 of the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181–263. The Colorado office of the Bureau of Land Management ("BLM") accepted Hertz's application and issued oil and gas lease number C–30483 on July 22, 1981. The lease became effective on August 1, 1981.

On August 21, Hertz entered into a lease assignment agreement with Terra Resources, a Delaware corporation with its principal place of business in Tulsa, Okla-

* Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation.

homa.[1] Under the terms of the lease, Hertz agreed to assign the lease approximately 53 weeks after its effective date. Terra Resources, in turn, agreed to accept assignment of the lease and to pay approximately $700,000 to Hertz. In consideration for making this agreement, Hertz paid Terra Resources $500 on August 21, 1981. The agreement contained no express warranty of marketable title.

On December 3, 1981, several months after the parties entered the agreement to assign the lease, but prior to the date set for actual assignment, the BLM cancelled Hertz's lease. The BLM found that Hertz's original lease application had been defective. Hertz appealed this decision to the Interior Board of Land Appeals ("IBLA"), which affirmed the BLM on March 10, 1982.

On August 9, 1982, 53 weeks and one day after the effective date of assignment, Hertz executed an assignment of the lease. On August 13, Terra Resources informed Hertz that it would not accept the attempted lease assignment because Hertz did not have a leasehold title to assign. Terra Resources also stated that it had both actual and constructive notice of the lease's title defect and that it, therefore, failed to qualify for protections extended by law to bona fide purchasers of subsequently cancelled leases. *See* Bona Fide Purchaser Amendment to the Mineral Leasing Act, 30 U.S.C. § 184(h)(2) [hereinafter "Bona Fide Purchaser Amendment" or "Amendment"].

Hertz threatened to file suit against Terra Resources for breach of contract. In response, Terra Resources initiated this action in the United States District Court for the District of Colorado, seeking a declaratory judgment under 28 U.S.C. § 2201 to determine its rights and obligations under the lease agreement. Terra Resources filed a motion for summary judgment, and Hertz counterclaimed, requesting damages for Terra Resources' alleged breach of contract. The district court granted Terra Resources' motion for summary judgment and

denied Hertz's claim for damages. Hertz filed this appeal.

While this appeal was pending, Hertz also appealed the IBLA's decision to cancel his lease to the United States District Court for the District of Columbia. On March 11, 1986, the district court ruled that the BLM's cancellation of the lease constituted an abuse of discretion. The BLM then vacated part of its earlier decision and reissued the original lease to Hertz. Hertz petitioned the IBLA for a new lease that would extend the term of the original lease five years, so that the lease would expire in 1996. In support of his request, Hertz argued that he could neither assign the lease nor conduct operations for much of the time that litigation was pending in this matter.

Hertz next filed suit against the United States in United States Claims Court, which returned a verdict in Hertz's favor on February 18, 1988. The claims court awarded Hertz $750,000 for the loss of the lease and ordered Hertz to reduce his counterclaim in this action by the same amount.

## II.

Hertz argues that Terra Resources had no legal justification for refusing to perform under the lease agreement because the Bona Fide Purchaser Amendment, 30 U.S.C. § 184(h)(2), shielded Terra Resources from any possible adverse consequences arising from the BLM's cancellation of Hertz's lease. Hertz also contends that this case involves genuine issues of material fact that preclude summary judgment. Terra Resources counters with four arguments: (1) that the district court lacked subject matter jurisdiction over this case because Hertz failed to demonstrate an injury in fact; (2) that Hertz lacks standing to invoke the Bona Fide Purchaser Amendment on behalf of Terra Resources; (3) that Terra Resources does not qualify as a bona fide purchaser under the Bona Fide Purchaser Amendment and therefore lacked protection from any ad-

---

1. Terra Resources, Inc., through a statutory merger has been renamed Pacific Enterprises Oil Company, a California corporation.

verse consequences that might have arisen from the BLM's cancellation of Hertz's lease; and (4) that Terra Resources was not required to accept Hertz's assignment because Colorado law requires that the seller convey marketable title.

### III.

■ We first determine if Hertz has suffered an injury sufficient to establish subject matter jurisdiction over this case. This is a legal question, which we review de novo. *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir.1987). Article III of the United States Constitution limits the judicial power of the federal courts to the resolution of "cases" or "controversies." U.S. Const. art. III. A case or controversy does not exist unless a plaintiff can show, at a minimum, that he or she has suffered "some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Terra Resources argues that Hertz cannot show the requisite injury because the claims court fully compensated Hertz for any injuries resulting from the cancellation of the lease. We disagree.

■ Hertz seeks $701,669.50, the amount allegedly due under the lease agreement, as well as interest at the rate of eight percent per year. Colorado law permits a claimant to recover eight percent interest from the time a payment is wrongfully withheld to either the date of payment or the date judgment is entered. *See* Colo.Rev.Stat. § 5–12–102(1)(b) (Supp.1988); *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364–66 (Colo.1989) (holding that mere breach of contract is sufficient to trigger the § 5–12–102(1)(b) allowance for recovery of interest on amounts "wrongfully withheld"); *see also Casto v. Arkansas-Louisiana Gas Co.*, 562 F.2d 622, 625 (10th Cir.1977) (state law governs the award of prejudgment interest on a state law claim in federal court). If Hertz can show that Terra Resources wrongfully breached the lease agreement, he will be entitled to recover annual interest payments of eight

percent of $701,669.50 or approximately $56,000 a year, for the five and a half years between the time of the alleged breach and the date that the court of claims paid Hertz $750,000. The sum of these interest payments would amount to approximately $308,000. Because the sum of $308,000 and $701,669.50 is well in excess of the $750,000 that Hertz has already received, it is clear that Hertz has adequately alleged that he suffers from uncompensated financial injury. We hold that proper subject matter jurisdiction exists over this case.

### IV.

■ We next address Terra Resources' argument that, even if it did qualify as a bona fide purchaser under the Bona Fide Purchaser Amendment, it still was not required to accept Hertz's assignment because Colorado law implies a warranty of marketable title in a contract to assign an oil and gas lease. We review this question of law de novo. *Carey*, 812 F.2d at 623. The Colorado Supreme Court has not yet ruled on this issue, so we must predict how that court would decide the question if faced with it. To guide us in this inquiry, we consider all the resources available to us, including Colorado and federal case law, decisions from other jurisdictions, and the weight and trend of authority. *Farmers Alliance Mutual Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir.1980).

■ We first examine any Colorado case-law that is related to the issues in this case. It is settled law in Colorado that agreements to convey real property, unless they provide otherwise, contain an implied warranty that the conveyance of title will be "free from lien or encumbrance." *Micheli v. Taylor*, 114 Colo. 258, 159 P.2d 912, 914 (1945) (en banc); *see Tilbury v. Osmundson*, 143 Colo. 12, 352 P.2d 102, 105 (1960) (purchaser of land is not required to accept title which invites or exposes him to litigation); *Heaton v. Nelson*, 69 Colo. 320, 194 P. 614 (1920); *W.T. Craft Realty Co. v. Livernash*, 27 Colo.App. 1, 146 P. 121, 123 (1915) (citing *Price v. Immel*, 48 Colo. 163, 109 P. 941 (1910)). However, the actual conveyance, unlike the agreement to con-

vey, contains no implied warranty, *see Micheli*, 159 P.2d at 914, because prior negotiations and agreements to convey merge into the deed, which then determines the rights of the parties, see *Reed v. Dudley*, 35 Colo. App. 420, 533 P.2d 507, 508 (1975) (citations omitted).

The substantial weight of authority indicates that there is little reason to expect that the Colorado Supreme Court would treat oil and gas leases differently than real property. "The majority rule in other states holds that a lessee's interest in a gas and oil lease is an interest in real estate. Colorado seems to favor the general rule." *Hagood v. Heckers*, 31 Colo.App. 172, 502 P.2d 961, 963 (1972) (citations omitted); *see also Brice v. Pugh*, 143 Colo. 508, 354 P.2d 1024 (1960) (per curiam) (treating an oil and gas lease as an interest in real estate for purposes of mortgage recording requirements).

The commentators are in accord that a warranty of marketable title is implied by law in a contract to assign an oil and gas lease, even though no such warranty is implied in the actual assignment. For example, one treatise writer has noted:

> with respect to ordinary land transactions, it is well established that in the absence of a specific provision on the subject, it is implied in every executory contract for the sale of land that the vendor must provide merchantable or marketable title. The same is true in the instance of contracts for the execution or assignment of an oil and gas lease.

2 E. Kuntz, *A Treatise on the Law of Oil and Gas* § 19.11, at 38 (1989) (footnotes omitted) [hereinafter E. Kuntz]. Another writer has observed:

> A contract to assign an oil and gas lease carries with it an implied covenant of quiet enjoyment, although it contains no express warranty.... In an assignment of a lease, on the other hand, as distinguished from a contract to assign, there is no implied warranty of title, where the law as to the conveyance of land is followed.

2 A. Casner, *American Law of Property*, § 10.88, at 707 (1952) (footnotes omitted)

(citing *Sunset Oil Co. v. Whistleman*, 77 Colo. 570, 237 P. 1116 (1925), for the proposition that, in contrast to contracts to assign, there is no implied warranty of title in the executed assignment) [hereinafter A. Casner]; *see* 3 W. Summers, *The Law of Oil and Gas* § 544, at 524–29 (1958); *see also O'Kane v. Walker*, 561 F.2d 207, 212 (10th Cir.1977) (effect of absence of warranty of title in executed assignment in the New Mexico oil and gas industry is that no warranty exists).

In *Sunset Oil Co. v. Whistleman*, 77 Colo. 570, 237 P. 1116 (1925), the Colorado Supreme Court followed the settled trend that no warranty of title should be implied into an assignment of an oil and gas lease. The court rejected the argument that the defendant assignor was liable for a breach of contract due to a failure of title in the oil and gas lease:

> there being no covenants of warranty in the assignment between the parties, nor any promise or agreement broken by the defendants, as far as the record discloses: hence no basis for an action. If the parties had so intended, they could have easily inserted such provision in the contract.

*Id.*, 237 P. at 1116.

We interpret the *Sunset Oil Co.* court's reference to a "promise or agreement" to be applicable only to subsequent agreements and not prior unexecuted agreements, such as a contract to assign. Ordinarily, when an assignment is completed, the contract to assign is considered executed and the transaction is merged into the assignment. The parties must then look to the express or implied provisions of the assignment rather than the contract to assign. E. Kuntz § 19.11, at 44–45. *Sunset Oil Co.* involved an executed assignment. Thus, we read the holding of the case to apply only to actual assignments and subsequent agreements. This interpretation is the only one in accordance with well-settled law. *See* A. Casner § 10.88, at 707, n. 3 & accompanying text.

We conclude that the contract between Terra Resources and Hertz to assign the oil and gas lease in question contained an im-

plied warranty of marketable title. Because Hertz did not have title in the lease at the time set for performance, we hold that Terra Resources was under no duty to accept the assignment.

Finally, we address Hertz's argument that the district court's grant of summary judgment was inappropriate in this case. Hertz argues that summary judgment was improper because the trial court should have resolved, as a factual matter, whether it can be inferred from the practice of the Colorado oil and gas industry that in "the absence of an express warranty of marketable title in a contract to purchase a federal oil and gas lease ... no such warranty is to be implied." We disagree. Hertz's argument presents no material issue since in the absence of an express warranty of marketable title in an agreement to assign an oil and gas lease, Colorado implies the warranty into the contract, as a matter of law. We conclude that no genuine issue of material fact exists, *see Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 653 (10th Cir. 1986), and that the grant of summary judgment was appropriate.

### V.

We do not reach the other issues raised on appeal and express no opinion as to their proper resolution. The judgment of the district court is AFFIRMED.