NILE VALLEY FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,

v.

SECURITY TITLE GUARANTEE CORPORATION OF BALTIMORE, Defendant and Third–Party Plaintiff–Appellant,

v.

Ross J. WABEKE, Trustee of the Bankruptcy Estate of Carpenter & McAleer Associates, a Colorado general partnership, Third–Party Defendant–Appellee.

No. 90CA1218.

Court of Appeals of Colorado, Div. III.

June 6, 1991.

Sherman & Howard, Hugh H. McClearn, F. Brittin Clayton III, Denver, for defendant and third-party plaintiff-appellant.

Katch, Wasserman & Jobin, Christine J. Jobin, Dana M. Arvin, Denver, for third-party defendant-appellee.

Opinion by Judge ENOCH *.

Security Title Guarantee Corporation of Baltimore (Security Title) appeals the trial court's dismissal of its declaratory judgment action against Ross J. Wabeke, the trustee of the bankruptcy estate of Carpenter & McAleer Associates (the trustee). We affirm.

Security Title issued five title insurance policies insuring the interests of Nile Valley Federal Savings & Loan Association (Nile Valley) in five deeds of trust. The deeds of trust were granted to Nile Valley by Carpenter & McAleer Associates, a Colorado general partnership (Associates) comprised of the Lyle D. Carpenter Co. and Mariann McAleer, to secure five promissory notes given in settlement of a previous lawsuit.

The legal description in the deeds of trust identified five parcels of property in Larimer County, Colorado, record title to which was held in the name of Associates. The deeds of trust, however, were each signed by Lyle D. Carpenter and Mariann McAleer as individuals. The parties signed the settlement agreement in September 1986, and Nile Valley recorded the deeds with the Larimer County Clerk and Recorder in October 1986.

The Associates defaulted on the notes. Nile Valley consequently initiated foreclosure proceedings. However, because the deeds of trust were signed by Carpenter and McAleer in their individual capacities, it was unable to complete the foreclosure. Thus, Nile Valley demanded payment from Security Title pursuant to the title insurance policies, which Security Title refused. In response, Nile Valley filed this action for breach of contracts of title insurance.

In the meantime, in August 1987, Associates filed a Chapter 11 bankruptcy petition which was later converted to a Chapter 7 proceeding. The trustee maintained that the bankruptcy estate owned the property free and clear of Nile Valley's deeds of trust.

Security Title, therefore, filed a third-party complaint against the trustee seeking a declaratory judgment that the recording of the deeds of trust perfected Nile Valley's security interest in the property and, alternatively, that a constructive trust in Nile Valley's favor was appropriate.

The trustee filed a motion to dismiss the third-party complaint, which the trial court granted. Upon motion, the dismissal was certified as a final judgment pursuant to C.R.C.P. 54(b).

I.

Security Title first maintains that the recording of the deeds of trust in the individual names of the partners of Associates perfected Nile Valley's security interests in the property. It argues that the trade name affidavits filed with the Larimer County Clerk and Recorder and the state department of revenue provided constructive notice of the liens. We disagree.

■ Colorado's recording statute, § 38–35–109, C.R.S. (1990 Cum.Supp.), requires a secured party properly to record his interest in real property with the clerk and recorder of the county in which the property is located in order to protect his interest against those who subsequently claim interests in the same property. It is a race-notice statute. The purpose of the statute is to protect "purchasers of real property against the risk of prior secret conveyances by the seller [and] to permit a purchaser to rely on the condition of title as it appears of record." *Grynberg v. City of Northglenn,* 739 P.2d 230 (Colo.1987).

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

■ If a document is properly recorded, the whole world is deemed to have constructive notice of the encumbrance. *Arnove v. First Federal Saving & Loan*, 713 P.2d 1329 (Colo.App.1985); *In re Bandell Investments, Ltd.*, 80 B.R. 210 (D.Colo. 1987).

Here, although title to the property was recorded in the county clerk and recorder's office under the name of the partnership, Associates, Nile Valley's interests were recorded under the individual names of Carpenter and McAleer.

Section 7–60–108(3), C.R.S. (1985 Repl. Vol. 3A) requires the conveyance of real property owned by a partnership to be executed in the partnership name. Thus, a title search of partnership property may be done by tracing the partnership name in the indices at the clerk and recorder's office in the county where the property is located.

Security Title argues that a title searcher of partnership property is further obligated to review the trade name affidavits filed in that county by the partnership for the individual partners' identities and then to search the indices under each individual's name. We disagree.

■ A title searcher is not required to examine documents outside the chain of title unless a possible irregularity in the chain of title appears in the record. *Delta County Land & Cattle Co. v. Talcott*, 17 Colo.App. 316, 68 P. 985 (1902). Security Title has presented no authority to require otherwise, and we decline to extend the presumption of constructive notice to information contained in trade name affidavits. *See Grynberg v. City of Northglenn, supra; Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531 (10th Cir.1987).

■ Here, there was no indication in the record of any conveyance of interest by Associates in favor of Nile Valley, or of any irregularity that would cause a title searcher to inquire. As such, the trustee did not have constructive notice of Nile Valley's unperfected security interests.

■ Moreover, Nile Valley prepared the deeds of trust for signature. It is properly

charged with the responsibility for compliance with applicable statutes. *See Pearson v. Salina Coffee House, Inc., supra; In re Hinson v. Hinson*, 62 B.R. 964 (Bankr.W.D.Penn.1986).

## II.

Security Title next contends that the trial court erred in not declaring a constructive trust in Nile Valley's favor. We discuss this issue in conjunction with the third issue raised by Security Title, whether as a matter of bankruptcy law, 11 U.S.C. § 544 (1984) gives the trustee rights in property superior to those of the beneficiary of a constructive trust. We conclude that it does.

11 U.S.C. § 544 (1984) provides in pertinent part:

"The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

"(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists....

. . . .

"(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

These are commonly known as the trustee's "strong-arm" lien avoidance powers.

■ Security Title argues that the strong-arm powers are limited by 11 U.S.C. § 541(d) (1984) which provides:

"Property in which the debtor holds, as of the commencement of the case, only

legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

It further argues that pursuant to § 7–60–110(2), C.R.S. (1985 Repl.Vol. 3A), Nile Valley holds an equitable interest in the property in question. While we agree that Nile Valley holds an equitable interest in the property, we do not agree that the trustee's strong-arm lien avoidance powers are limited by § 541(d).

■ Courts are split on this issue. *See* Annot., *Power of a Trustee in Bankruptcy to Defeat Rights of Beneficiary of Constructive Trust under § 544(a) of Bankruptcy Code (11 U.S.C. § 544(a)*, 96 A.L.R. Fed. 100 (1990). We conclude that those courts which hold that § 544(a) powers defeat the rights of constructive trust beneficiaries express a better reasoned view. *See In re Tleel*, 876 F.2d 769 (9th Cir.1989); *In re Granada, Inc.*, 92 B.R. 501 (Bankr.D. Utah 1988); *In re Cascade Oil Co.*, 65 B.R. 35 (Bankr.D.Kan.1986); *In re Dlott*, 43 B.R. 789 (Bankr.Mass.1983).

The general reasoning of this position is set forth in *In re Cascade Oil Co., supra:*

"Th[is] Court is primarily persuaded by the analysis in §§ 541 and 544 set out in *In re Great Plains Western Ranch Co., Inc.*, 38 B.R. 899 (Bankr.C.D.Cal.1984). In that case Judge Ayer carefully reviewed both §§ 541 and 544 and their antecedents in the Bankruptcy Act of 1898 and concluded that some equitable limits were imposed upon the property to which a debtor trustee succeeded under § 541, but that any equitable claims could be avoided under § 544(a)(3).

"Great Plains, a limited partnership, had record title to two ranches in Mississippi and Texas upon the filing of its Chapter 11 in California. The limited partners asserted rights in the land under various theories, including a constructive trust. While assuming the fraud necessary to support the imposition of a constructive trust, Judge Ayer concluded that the trustee's powers under § 544(a)(3) allowed Great Plains to avoid any claim of the limited partners under constructive trust principles or otherwise.... Judge Ayer rather succinctly summarized his conclusions as follows:

'Even conceding that the property rights of the estate are derivative from the property rights of the debtor, still the trustee enjoys additional powers quite independent of his powers under Section 541, and in no way derivative from the debtor's rights at state law. Failure to consider section 544 together with section 541 may lead to misleading generalizations and sometimes to unsound results.' "

We adopt the position that § 541(d) does not automatically limit the trustee's § 544 strong-arm lien avoidance powers.

Consequently, we must next consider whether under Colorado law the trustee possesses security interests that have priority over Nile Valley's interests. *In re Harbor Pointe Office Park, Ltd.*, 83 B.R. 44 (Bankr.D.Colo.1988); *In re Harms*, 7 B.R. 398 (Bankr.D.Colo.1980).

■ Section 544(a) places the trustee in the shoes of a bona fide purchaser or judicial lien creditor. In Colorado, with regard to realty, a bona fide purchaser and judicial lien creditor have priority over one with an unrecorded equitable interest in the property. *Sky Harbor, Inc. v. Jenner*, 164 Colo. 470, 435 P.2d 894 (1968).

■ We concluded in Section I that Nile Valley's interest was unrecorded. Even if we were to conclude that the trial court should have imposed a constructive trust in Nile Valley's favor, its interest would be merely equitable. *In re Marriage of Allen*, 724 P.2d 651 (Colo.1986); *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). Consequently, we hold that the trustee's rights to the property are superior to any that Nile Valley may have. *See In re Harms, supra.*

Judgment affirmed.

TURSI and CRISWELL, JJ., concur.