IN RE: MICHAEL STEVEN I. KATZ, also known as Michael S. Katz, also known as Michael Katz, doing business as All Areas Bail Bonds, and HOLLY K. KATZ, also known as H. Kim Katz, also known as Holly Katz, also known as Kim Katz, also known as Holly Mark, Chapter 7, Debtors.
TOM H. CONNOLLY, Plaintiff-Appellant,
v.
ARGENT MORTGAGE COMPANY, LLC, ANDREW MARK, and ORION ADAMS MORRIS, Defendants-Appellees, and
DENNIS S. FERRARO and GOLDEN BAIL BONDS, LLC, doing business as Jennie Jiffy Bail Bonds, Defendants.
Bankr. No. 05-29572-MER, Adv. No. 06-01873-MER.
United States Bankruptcy Appellate Panel, Tenth Circuit.
December 1, 2009
Before CORNISH, Chief Judge, MICHAEL, and THURMAN, Bankruptcy Judges.

OPINION[*]
CORNISH, Chief Judge.
Trustee Tom H. Connolly ("Trustee") appeals the bankruptcy court's order and judgment in favor of creditor Argent Mortgage Co., LLC ("Creditor") determining that Colorado's doctrine of equitable subrogation prevents the Trustee from using his strong arm powers to avoid Creditor's unrecorded deed of trust. Having reviewed the record and applicable law, we REVERSE.[1]

I. BACKGROUND FACTS
This appeal involves real property located in Denver, Colorado (the "Property"). Debtor Holly Katz ("Debtor") owned the Property in fee simple. She received title to the Property through a Personal Representative's Deed of Distribution that had been properly recorded in the land records for the City and County of Denver.[2]
Initially, the Debtor mortgaged the Property to Litton Loan Servicing LP ("Litton") to secure a promissory note for approximately $140,000. Litton properly recorded its deed of trust.[3] Debtor subsequently refinanced the Property by obtaining a loan from Creditor in the amount of $156,000, and executing an adjustable rate note.[4] Debtor also signed a deed of trust in favor of Creditor, granting a security interest in the Property.[5] Creditor disbursed $139,632.23 to Litton to pay off Debtor's debt, and Litton then released its recorded deed of trust.[6] However, Creditor never recorded its deed of trust, nor obtained any kind of assignment from Litton. The Debtor and Creditor stipulated that they intended for Creditor to hold the first lien on the Property.[7]
Debtor and her husband filed for Chapter 7 relief on August 5, 2005. They listed several parcels of real estate on Schedule A, including the Property. The Trustee filed this adversary proceeding with respect to the Property, bringing seven claims of relief against five different defendants.[8] The court clerk entered default pursuant to Federal Rule of Bankruptcy Procedure 7055(a) against two defendants.[9] Agreed judgments were entered against two other defendants.[10] As a result, only the Trustee's claims against Creditor were presented to the bankruptcy court for resolution. Trustee sought a declaratory judgment that Creditor held no security interest in the Property, and an order avoiding Creditor's security interest and preserving it for the bankruptcy estate pursuant to 11 U.S.C. § 544 and § 551.[11] Creditor raised the affirmative defense of equitable subrogation under Colorado law, arguing that in paying off Litton's deed of trust, it stepped into the secured and properly perfected position previously occupied by Litton, ahead of all other lien holders.
The Trustee and Creditor filed motions for summary judgment. The bankruptcy court granted Creditor partial summary judgment, finding that Creditor possessed a valid security interest in the Property as between it and Debtor or the Trustee. However, the bankruptcy court found that issues of fact existed as to some elements of Creditor's equitable subrogation claim, and set those issues for trial.[12]
Trial was conducted on October 8, 2008. Only two witnesses testified: the Trustee and Steve Newcomb ("Newcomb"), a corporate representative of Creditor. The Trustee testified that he caused a title search to be made of the Property, which revealed that Debtor was the record title owner as of August 8, 2005, the date the bankruptcy petition was filed. The search also revealed a deed of trust to a third person recorded postpetition.[13] No deed of trust was recorded in favor of Creditor.[14]
Newcomb testified regarding Creditor's procedures as a lender and the recordation of deeds of trust. He stated it was the title company's responsibility to record the deed of trust, and that there appeared to be no follow-up by Creditor on the Debtor's loan to verify the deed of trust was in fact recorded to perfect its security interest. The only tracking system Creditor employs is to note the recording of the deed of trust in its loan file when it receives notice of recording from the closing agent. Newcomb also testified that besides relying on the closing agent to protect its interest, Creditor relies on title insurance, and would suffer no prejudice if the bankruptcy court avoided Creditor's unperfected security interest because it would collect from the title insurer.[15]
The bankruptcy court ruled in favor of Creditor. It held that the Trustee's avoidance powers were subject to Colorado's doctrine of equitable subrogation. Applying that doctrine, the court found that Creditor was the effective assignee of the deed of trust formerly held by Litton, thus rendering Creditor's failure to record its deed of trust irrelevant.[16] Trustee timely appealed.

II. APPELLATE JURISDICTION
This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[17] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have therefore consented to appellate review by this Court.
A decision is considered final "if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[18] On July 6, 2009, this Court issued an order to show cause on finality of the order being appealed.[19] After reviewing the parties' responses, on August 10, 2009, this Court entered its Order Requiring Rule 54(b) Certification or Final Order Adjudicating Remaining Claims.[20] On September 24, 2009, Trustee filed notice with this Court that the bankruptcy court entered a Rule 54(b) order on September 22, 2009.[21] Thus, the bankruptcy court's order and judgment is now final for purposes of our review.

III. STANDARD OF REVIEW
Neither party raises any disputed factual issues on appeal. The bankruptcy court's interpretation and application of the doctrine of equitable subrogation in this case involves questions of law. We review questions of law de novo.[22]De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[23]

IV. ANALYSIS
The Trustee seeks to use his strong-arm powers as either a hypothetical judgment creditor under § 544(a)(1) or a hypothetical bona fide purchaser under § 544(a)(3) to avoid Creditor's unperfected security interest in the Property, and preserve the avoided lien for the benefit of the estate pursuant to § 551. The bankruptcy court found that ordinarily "under Colorado law, the Trustee, granted the status of a hypothetical lien creditor deemed to have perfected his interest as of the date of the filing of the bankruptcy petition pursuant to § 544(a), can avoid [the Creditor's] interest in the [ ] Property because his interest takes priority over an unrecorded mortgage."[24] However, the bankruptcy court also determined that Colorado's doctrine of equitable subrogation operated to elevate Creditor's otherwise unperfected lienholder position to one with priority over the Trustee. Under the doctrine of equitable subrogation, Creditor is substituted into the lien-priority status of Litton the original, senior lienholder that Creditor paid off when the Debtor refinanced the Property.[25] Thus, the bankruptcy court held the Trustee could not avoid Creditor's lien. We disagree.
Although the Trustee's strong-arm powers arise under federal law, the scope of those powers is determined by the law of the state in which the subject property is located.[26] On appeal, the Trustee argues that any interest created through equitable principles under state law is inferior to his strong-arm powers, citing Nile Valley Savings & Loan Ass'n v. Security Title Guarantee Corp. of Baltimore ("Nile Valley").[27] We do not read that case so broadly. Instead, we agree with the Nile Valley court's holding that a trustee's strong-arm powers are not "automatically" limited by § 541(d), and we must look to state law to determine whether the Trustee, as a lien creditor or bona fide purchaser, has priority over any interest in the Property that Creditor may claim under state law.[28] Since Creditor claims a priority interest over the Trustee pursuant to Colorado's doctrine of equitable subrogation, we must examine whether that doctrine applies in this case to defeat Trustee's strong-arm avoidance powers.
Colorado's Recording Act provides that unrecorded instruments are invalid as against any subsequent purchaser or encumbrancer without notice of the prior instrument.[29] This is to protect subsequent purchasers from secret prior liens. However, Creditor argues that Colorado's doctrine of equitable subrogation allows it to essentially cure its unperfected security interest in the Property by assuming the same priority as Litton's original lien as of the date it paid off Litton's deed of trust. As explained by the Colorado Supreme Court, "within the context of mortgages, equitable subrogation permits the substitution of a later lienholder into the lien-priority status of a prior lienholder. The doctrine allows a later-filed lienholder to leap-frog over an intervening lien and take a priority position."[30]
Five elements must be present in order for Creditor to be equitably subrogated to Litton's prior lien and have priority over the Trustee:
1. The subrogee (the Creditor) made the payment to a senior lienholder to protect its own interest;
2. The subrogee did not act as a volunteer;
3. The subrogee was not primarily liable for the debt paid;
4. The subrogee paid off the entire encumbrance; and
5. Subrogation would not work any injustice to the rights of the junior lienholder.[31]
Even if all five of these elements are present, a final, overarching element regarding the subrogee's knowledge, negligence, and sophistication must be considered to determine whether application of the doctrine of equitable subrogation would be inequitable.[32]
The parties agree that the first four elements were met. However, they disagree regarding the application of the fifth element. The bankruptcy court ruled that the Trustee held the status of an intervening lienholder who would not be prejudiced by the application of equitable subrogation. It reasoned that the Trustee's position with respect to the Property remained the same as before Creditor paid off Litton, because Creditor was only seeking priority as to the amount it paid Litton, not the full amount that Debtor borrowed from Creditor. Accordingly, the bankruptcy court found all five elements of equitable subrogation were present.[33]
Colorado case law is clear that the preeminent consideration in applying the doctrine of equitable subrogation is the possible prejudice or injustice that may result to an intervening lienholder or party having equities equal to the potential subrogee.[34] If a lienholder is prejudiced, equitable subrogation cannot apply.[35] In analyzing whether prejudice to the Trustee would result from the application of equitable subrogation, the timing of events is critical. Here, it appears the bankruptcy court and Creditor either chose the wrong point in time to evaluate the Trustee's position in relation to Litton and Creditor, or failed to consider the state of record title to the Property on the date the bankruptcy was filed.
The bankruptcy court and Creditor assumed that the Trustee, as a hypothetical lien creditor, was a junior lienholder to Litton at the time Creditor paid off Litton. As an intervening and junior lienholder at that time, the Trustee would suffer no prejudice if Creditor, the "later-filed lienholder," was allowed to "leap-frog" over him, since he would have had knowledge of Litton's prior, recorded lien, and his priority would have remained unchanged by Creditor's substitution into Litton's position. Under this scenario, when Creditor paid off Litton, it very well could have become equitably subrogated to Litton's priority status because there would be no prejudice to an existing junior lienholder with notice of Litton's prior lien at that time.
Under the facts of this case, however, the Trustee was not an intervening lienholder between the Creditor and Litton, and Creditor was not a later-filed lienholder as to the Trustee. To evaluate the Trustee's position in relation to other parties claiming an interest in the Property, this Court must focus on the proper date to determine the interests the date the bankruptcy petition was filed. That is the date upon which the Trustee's strong-arm and avoidance powers arise pursuant to § 544(a):
The trustee shall have, as of the commencement of the case . . . the rights and powers of, or may avoid any transfer of property of the debtor . . .
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time . . . a judicial lien on all property . . . whether or not such a creditor exists;
. . .
(3) a bona fide purchaser of real property . . . from the debtor . . . and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[36]
As of the commencement of the bankruptcy, no lien was filed of record against the Property. Creditor paid off Litton and Litton filed a release of its deed of trust approximately eight months before the Debtors filed bankruptcy. As the parties admit, an examination of the land records as of the petition date revealed only the conveyance to the Debtor, Litton's deed of trust, and Litton's release of that deed of trust. Therefore, anyone examining the land records at that time would have no notice of any liens encumbering the Property. A creditor loaning money to the Debtor and obtaining a lien on the Property would think that it had first priority. A buyer would think it was purchasing the Property free and clear.
If Creditor is allowed to be subrogated to Litton's prior lien, the Trustee's rights as a hypothetical lien creditor or bona fide purchaser would certainly be prejudiced. Subrogation would relegate the Trustee from a position of first in line to a position behind Creditor. Since prejudice to an intervening lienholder bars the application of equitable subrogation, Creditor may not equitably subrogate its interest in the Property to Litton's. Without the benefit of equitable subrogation, Creditor's unrecorded deed of trust is insufficient to put subsequent lienholders or purchasers on notice of its claim against the Property.
Our analysis of equitable subrogation is consistent with the Colorado Supreme Court's most recent decision regarding equitable subrogation, Land Title Insurance Corp. v. Ameriquest Mortgage Co. ("Land Title").[37] Although the case was decided after the bankruptcy court's order, it does not change, but merely clarifies, existing Colorado law.[38]Land Title holds that where a payor fails to timely record an interest it claims through equitable subrogation, the delay may bar enforcement of its subrogation rights when another party is prejudiced because it detrimentally relies on the state of the title recorded. As examples of detrimental reliance and prejudice that bar subrogation, the Land Title court cited the sale of property to an innocent purchaser who relies on the record title, or an intervening lienholder who commences foreclosure or purchases the property at a foreclosure sale in detrimental reliance on the clear record title.[39] A party seeking to enforce subrogation rights must publicly assert its rights to the earlier mortgage or risk being barred from relying on those rights when another party relies on the record state of title.[40]
There is no support in case law for Creditor's argument that the Trustee must show actual harm in order to suffer prejudice that prevents application of the doctrine of equitable subrogation. This argument ignores the statute's creation of Trustee's interest as that of a hypothetical judgment creditor or bona fide purchaser. To require the Trustee to prove actual harm would render the strong-arm powers a nullity.

V. CONCLUSION
The bankruptcy court erred in ruling Creditor had rights in the Property by virtue of equitable subrogation that prevented the Trustee from avoiding Creditor's unrecorded deed of trust and preserving the avoided lien for the benefit of the estate. Therefore, the bankruptcy court's order and judgment regarding the Trustee's claims against the Creditor is REVERSED.
NOTES
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.
[2] Personal Representative's Deed of Distribution, in Appellant's App. at 62.
[3] Joint Statement of Undisputed Facts, in Appellant's Supp. App. at 115.
[4] Adjustable Rate Note, in Appellant's Supp. App. at 128.
[5] Deed of Trust, in Appellant's App. at 63.
[6] Joint Statement of Undisputed Facts, in Appellant's Supp. App. at 115. The parties submitted a copy of the Settlement Statement showing the payoff to Litton, but apparently the release itself was not submitted into evidence.
[7] Id.
[8] Complaint, in Appellant's App. at 1.
[9] Default was entered against defendants Andrew Mark and Orion Adams Morris. Order entered December 30, 2008, at 1 n.1, in Appellant's App. at 77. It does not appear from the docket sheet or record that the bankruptcy court entered default judgments against these two defendants or that any further action was taken regarding the claims against them.
[10] Agreed judgments were entered against Dennis S. Ferraro and Golden Bail Bonds, LLC on January 25, 2007. Id. 
[11] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.
[12] Order entered January 15, 2008, in Appellant's App. at 13.
[13] On September 13, 2005, a quitclaim deed conveying a one-half interest in the Property from Debtor to Orion Adam Morris ("Morris") was recorded. The quitclaim deed was dated February 24, 2004 (a year and a half prepetition). Also recorded on September 13, 2005, was a deed of trust granting a security interest in the Property to Morris in the amount of $30,000. No court or Trustee approval was obtained for these postpetition transfers. However, these transactions have no impact on the analysis of the relative priorities of the Trustee's and the Creditor's interests in the Property.
[14] Creditor stipulated to these facts. See Joint Statement of Undisputed Facts, in Appellant's Supp. App. at 115.
[15] Transcript, in Appellant's App. at 47, 50-51.
[16] Order entered December 30, 2008, in Appellant's App. at 77.
[17] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002; 10th Cir. BAP L.R. 8001-1.
[18] Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).
[19] Docket No. 63119.
[20] Docket No. 63403.
[21] Docket No. 63846.
[22] See, e.g., Elder v. Holloway, 510 U.S. 510, 516 (1994) (questions of law reviewed de novo).
[23] Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991).
[24] Order entered December 30, 2008, at 5, in Appellant's App. at 81.
[25] Id. at 9, in Appellant's App. at 85.
[26] See LMS Holding Co. v. Core-Mark Mid-Continent, Inc., 50 F.3d 1520, 1523 (10th Cir. 1995); In re Bridge, 18 F.3d 195, 200 (3rd Cir. 1994).
[27] Nile Valley Fed. Savs. & Loan Ass'n v. Sec. Title Guarantee Corp. of Baltimore, 813 P.2d 849 (Colo. App. 1991).
[28] Id. at 853.
[29] Colo. Rev. Stat. § 38-35-109; Hallett v. Alexander, 114 P. 490, 492-93 (Colo. 1911).
[30] Hicks v. Londre, 125 P.3d 452, 456 (Colo. 2005) (citations omitted). See also Land Title Ins. Corp. v. Ameriquest Mortgage Co., 207 P.3d 141 (Colo. 2009) (Equitable subrogation is "the right of a payor of an encumbrance on real property to revive and enforce this obligation against the property and to maintain the discharged obligation's lien priority as against other, intervening liens.").
[31] Hicks, 125 P.3d at 456.
[32] Id. at 457-58.
[33] Since this Court concludes that equitable subrogation is not proper in this case, we need not address the overarching element regarding Creditor's knowledge, negligence, and sophistication.
[34] Id. at 459-60; Capitol Nat'l Bank v. Holmes, 95 P. 314, 316 (Colo. 1908).
[35] Hicks, 125 P.3d at 459-60.
[36] 11 U.S.C. § 544(a) (emphasis added).
[37] Land Title Ins. Corp. v. Ameriquest Mortgage Co., 207 P.3d 141 (Colo. 2009).
[38] Prior to this decision, the Colorado Supreme Court stated that "[t]he right of subrogation is never granted as a reward for negligence." Hicks, 125 P.3d at 459.
[39] Land Title, 207 P.3d at 146.
[40] Id. (citing Restatement (Third) of Property (Mortgages) § 7.6 cmt. f).