FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

August 24, 2018

Blaine F. Bates
Clerk

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE DIANN MARIE CATES,

Debtor.

_____

JARED WALTERS,

Plaintiff - Appellant,

v.

L. EDMUND CATES and JANN REDELE
CATES,

Defendants - Appellees.

BAP No. CO-17-047

Bankr. No. 15-18969
Adv. No. 16-1202
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

David V. Wadsworth (Aaron J. Conrardy with him on the brief) of Wadsworth Warner
Conrardy, P.C., Denver, Colorado, for Plaintiff – Appellant.

Randall B. Pearce of RBP, LLC, Grand Junction, Colorado, for Defendants – Appellees.

_____

Before **CORNISH**, **JACOBVITZ**, and **HALL**, Bankruptcy Judges.

_____

JACOBVITZ, Bankruptcy Judge.

Diann Marie Cates filed a voluntary petition under Chapter 7 of the Bankruptcy

Code on August 11, 2015 (the "Petition Date"). Jared Walters, the Chapter 7 Trustee (the

"Chapter 7 Trustee") filed an adversary proceeding against L. Edmund Cates and Jann Redele Cates ("Edmund and Jann Cates") to recover a preferential transfer pursuant to 11 U.S.C. § 547 to avoid a deed of trust granted in favor of Edmund and Jann Cates.[1] Edmund and Jann Cates and the Chapter 7 Trustee filed cross motions for summary judgment on the issue of when the transfer in question occurred for preferential transfer purposes. Edmund and Jann Cates argued that the transfer occurred on March 4, 2013, well outside the applicable preference period.[2] The Chapter 7 Trustee argued the transfer occurred within the preference period, on August 3, 2015. The bankruptcy court agreed with Edmund and Jann Cates that the transfer occurred on March 4, 2013 and granted summary judgment in their favor. The bankruptcy court also denied the Chapter 7 Trustee's cross-motion for summary judgment and dismissed the adversary proceeding. Because we conclude the transfer occurred outside of the preference period, we affirm.

## I.    Facts

Approximately three years prior to filing her Chapter 7 bankruptcy petition, Diann Marie Cates (the "Debtor") executed a $135,000 promissory note in favor of Edmund and Jann Cates. The Debtor, who is related to Edmund and Jann Cates,[3] executed the note on

---

[1]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[2]    *Defendant's Motion for Summary Judgment and Memorandum Brief in Support* at 5, *in* Appellant's App. at 26.

[3]    The record does not indicate the relation; however, the Debtor does not contest this fact. *Answer* at 1, *in* Appellant's App. at 19 (the Debtor admits allegation the Edmund and Jann Cates are relatives in paragraph 9 of the *Complaint*).

August 1, 2012.[4] In conjunction with the note, the parties also drew up a deed of trust on August 1, 2012 (the "Deed of Trust"), which encumbered a condominium at 308 Hillcrest, Unit 404, Durango, Colorado 81301 (the "Property") to secure payment of the note.[5] The Debtor executed the Deed of Trust on October 10, 2012.

On January 24, 2013, the Debtor created a revocable one-party living family trust, named The Diann M. Cates Family Trust (the "Family Trust").[6] The Debtor is the settlor, trustee, and sole beneficiary of the Family Trust, which was created under Arizona law. The Debtor executed and recorded a quitclaim deed, quitclaiming her interest in the Property to the Family Trust on February 4, 2013.[7] Edmund and Jann Cates recorded the Deed of Trust with the La Plata County, Colorado county recorder on March 4, 2013.

Eight days before the Petition Date, on August 3, 2015, the Debtor caused the Family Trust to execute and record a quitclaim deed, quitclaiming the Family Trust's interest in the Property back to the Debtor.[8] Prior to this transaction, legal and record title to the Property vested in the Family Trust for approximately two and a half years.

---

[4]     *Promissory Note*, *in* Appellant's App. at 9.

[5]     *Deed of Trust*, *in* Appellant's App. at 11.

[6]     *Revocable One-Party Living Trust*, *in* Appellant's App. at 115.

[7]     *Quitclaim Deed*, *in* Appellant's App. at 17.

[8]     *Quitclaim Deed*, *in* Appellant's App. at 18.

A timeline of the relevant dates includes:

| DATE | EVENT |
|---|---|
| 08/01/2012 | Debtor executes the $135,000 promissory note payable to Edmund and Jann Cates |
| 10/03/2012 | Debtor executes the Deed of Trust in favor of Edmund and Jann Cates |
| 01/24/2013 | Debtor creates the self-settled revocable Family Trust |
| 02/04/2013 | Debtor conveys the Property to the Family Trust by a quitclaim deed executed and recorded that same day |
| 03/04/2013 | Edmund and Jann Cates record the Deed of Trust |
| 08/03/2015 | Family Trust conveys the Property back to Debtor; quitclaim deed recorded the same day |
| 08/11/2015 | Debtor files the Chapter 7 bankruptcy case |

In her bankruptcy case, the Debtor listed the Property in Schedule A of her Schedules of Assets and Liabilities, valuing it at $187,000.[9] The Debtor listed Edmund and Jann Cates as secured creditors with a claim of $135,000 in Schedule D.[10]

## II.  Jurisdiction and Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[11] "An order granting summary judgment disposing of the plaintiff's claims against the defendant is a final order for purposes of appeal."[12] Neither Edmund and Jann

---

[9]     *Schedule A*, *in* Appellant's App. at 75.

[10]     *Schedule D*, *in* Appellant's App. at 82.

[11]     *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (quoting 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1)).

[12]     *E.H. Hawes Revocable Tr. v. Cornerstone Creek Partners (In re Expert S. Tulsa, LLC)*, 534 B.R. 400, 407 (10th Cir. BAP 2015) (citing *Tanner v. Barber (In re Barber)*, 326 B.R. 463, 466 (10th Cir. BAP 2005)).

Cates nor the Chapter 7 Trustee elected for this appeal to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

The grant or denial of summary judgment is reviewed de novo, applying the same standard used by the bankruptcy court under Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56.[13] "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact' and the party moving for summary judgment is 'entitled to judgment as a matter of law.'"[14] Furthermore, as the Ninth Circuit Bankruptcy Appellate Panel concludes, "[t]he determination of when a transfer occurs for purposes of § 547 is a question of law which we review de novo."[15]

## III.  Analysis

The issue on appeal is when the transfer of an interest in the Deed of Trust occurred for preferential transfer purposes. Both parties agree the transfer occurred when the lien created by the Deed of Trust was perfected.

---

[13]  *Harris v. Beneficial Okla., Inc. (In re Harris)*, 209 B.R. 990, 993 (10th Cir. BAP 1997) (citing Tenth Circuit authority for the same).

[14]  *Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.*, 890 F.3d 1195, 1198 (10th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).

[15]  *Hall-Mark Elecs. Corp. v. Sims (In re Lee)*, 179 B.R. 149, 155 (9th Cir. BAP 1995) (citing *Long v. Joe Romania Chevrolet, Inc. (In re Loken)*, 175 B.R. 56, 60 (9th Cir. BAP 1994)); *see Fidelity Fin. Servs. v. Fink*, 522 U.S. 211, 215 (1998) ("Congress sometimes used the word 'perfection' to mean the legal conclusion that for such purposes as calculating priorities perfection of a lien").

The Chapter 7 Trustee argues that under Colorado law, considered in the manner prescribed by § 547(e)(1)(A), a lien created by the Deed of Trust can only be perfected when: (i) the Debtor could have conveyed the Property to a hypothetical bona fide purchaser; (ii) the lien created by the Deed of Trust could have been perfected against the bona fide purchaser; and (iii) the bona fide purchaser could not acquire an interest superior to the Deed of Trust. The Chapter 7 Trustee asserts that these requirements can only be satisfied when both (a) the Deed of Trust is recorded *and* (b) the grantor of the Deed of Trust (here the Debtor) holds record title to the Property encumbered by the Deed of Trust. Under the Chapter 7 Trustee's logic, because the Family Trust (not the Debtor) held legal and record title to the Property on the date the Deed of Trust was recorded, the lien created by the Deed of Trust was not perfected at that time. Instead, the lien created by the Deed of Trust was perfected within the preference period when the Family Trust quitclaimed the Property back to the Debtor, which is the first time the Debtor held record title to the Property after recordation of the Deed of Trust.

The bankruptcy court determined and Edmund and Jann Cates on appeal argue that: (i) under Colorado law the Debtor retained an ownership interest in the Property during the time the Debtor's revocable self-settled Family Trust owned and held record title to the Property; (ii) the Debtor's ownership interest in the Property was subject to the Deed of Trust when it was recorded on March 4, 2013; and (iii) under §§ 547(e)(2)(B) and (e)(3), because the Debtor had an ownership interest in the Property on the date the Deed of Trust was recorded, the transfer occurred on that date rather than the recording date of the quitclaim deed from the Family Trust to the Debtor.

6

Because we conclude that the transfer in question occurred upon recordation of the Deed of Trust regardless of whether the Debtor held any rights in the Property on that date, we will affirm the bankruptcy court without addressing what rights the Debtor had in the Property as of the date of recording of the Deed of Trust. We agree the transfer occurred on March 4, 2013, outside the preference period, and therefore affirm.

### a. Application of Section 547(e)(1) and (2)

With exceptions not applicable here, section 547(b) entitles a Chapter 7 trustee to avoid any "transfer" of an interest in the debtor's property: (a) to or for the benefit of a creditor; (b) made on account of an antecedent debt of the debtor; (c) made while the debtor was insolvent; (d) made within ninety days of the petition date (or one year if the creditor qualifies as an insider) (the "preference period"); and (e) that allows the creditor to receive more than the creditor would receive if the transfer had not been made and the debtor had filed a Chapter 7 case on the date the transfer in fact was made.[16]

The only issue on appeal is whether the "transfer" under § 547(b) occurred within the preference period. "'What constitutes a transfer [for purposes of § 547] and when it is

---

[16] The Chapter 7 Trustee "may avoid any transfer of an interest of the debtor in property . . . (4) made—(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider." 11 U.S.C. § 547(b)(4). No party appears to contest Edmund and Jann Cates were statutory insiders pursuant to 11 U.S.C. § 101(31)(A)(i), which extends the preference period to one year pursuant to 11 U.S.C. § 547(b)(4)(B). If March 4, 2013, is the applicable transfer date, the transfer did not occur within either preference period.

complete' is a matter of federal [bankruptcy] law."[17] Section 547(e)(2) contains three alternative scenarios that determine whether a transfer is made during the preference period. First, a transfer is made "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after such time."[18] Alternatively, a transfer is made "at the time such transfer is perfected, if such transfer is perfected after such 30 days."[19] Finally, a transfer is made "immediately before the date of the filing of the petition, if such transfer is not perfected at the later of – the commencement of the case; or 30 days after such transfer takes effect between the transferor and the transferee."[20]

The parties agree that the middle scenario applies here; therefore, the time of transfer is governed by § 547(e)(2)(B) and the transfer occurred when the transfer was perfected.[21] The parties disagree on when the transfer was perfected.

Section 547(e)(1)(A) governs the time of perfection of an interest in real property. It provides:

> a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom

---

[17]     *Barnhill v. Johnson*, 503 U.S. 393, 397 (1992) (quoting *McKenzie v. Irving Tr. Co.*, 323 U.S. 365, 369-70 (1945)).

[18]     11 U.S.C. § 547(e)(2)(A).

[19]     11 U.S.C. § 547(e)(2)(B).

[20]     11 U.S.C. § 547(e)(2)(C) (internal punctuation marks and subsection references omitted).

[21]     Appellant's Br. 10; Appellees' Br. 3-4.

applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.[22]

Under §§ 547(e)(1)(A) and 547(e)(2)(B), for purposes of avoiding the transfer under § 547(b), the transfer occurred when the lien created by the Deed of Trust was perfected. As applied to the transfer at issue, the transfer was perfected when a bona fide purchaser of the Property from the Debtor, against whom Colorado law permits such transfer to be perfected, cannot acquire an interest that is superior to the interest of the transferees under the Deed of Trust, Edmund and Jann Cates. Section 547(e)(3) provides further that for purposes of § 547(e), "a transfer is not made until the debtor has acquired rights in the property transferred."[23]

*(1) Colorado law on bona fide purchasers of real property applied in the context of section 547(e)*

In accordance with § 547(e)(1)(A), to determine when the transfer was perfected, we turn to Colorado law, which is the applicable law governing when a bona fide purchaser of the Property from the Debtor cannot acquire an interest that is superior to the interest of Edmund and Jann Cates.[24] In other words, when, under Colorado law, could a bona fide purchaser of the Property from the Debtor not obtain an interest superior to the rights of Edmund and Jann Cates in the Deed of Trust?

---

[22]   11 U.S.C. § 547(e)(1)(A).

[23]   11 U.S.C. § 547(e)(3).

[24]   *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849, 852 (10th Cir. 1990) ("State law controls the issue of whether a property interest has been perfected." (citing *Butner v. United States*, 440 U.S. 48, 55 (1979))).

First, we note that the properly executed but unrecorded Deed of Trust created a lien against the Property.[25] The Debtor executed the Deed of Trust at a time the Debtor owned the Property in fee simple. As such, the lien became effective between the Debtor and Edmund and Jann Cates when the Deed of Trust was executed on October 3, 2012.

Colorado's race-notice recording statute[26] governs when third parties were put on constructive notice of the lien. Colorado's race-notice recording statute requires "a secured party properly to record his interest in real property with the clerk and recorder of the county in which the property is located in order to protect his interest against those who subsequently claim interests in the same property."[27] "The statute protects a later grantee with rights in real property against a prior executed but unrecorded instrument to which it is not a party, if the later grantee lacks notice of the prior unrecorded instrument and records first."[28] The purpose of the recording "statute is to protect 'purchasers of real property against the risk of prior secret conveyances by the seller [and] to permit a

---

[25]   *See* Colo. Rev. Stat. Ann. §§ 38-38-101-113 (West 2018) (referring to a deed of trust as a lien).

[26]   A race-notice recording statute is "[a] recording law providing that the person who records first, without notice of prior unrecorded claims, has priority." *Race-Notice Statute*, Black's Law Dictionary (10th ed. 2014).

[27]   *Nile Valley Fed. Sav. & Loan Ass'n v. Sec. Title Guarantee Corp. of Baltimore*, 813 P.2d 849, 851 (Colo. App. 1991); Colo. Rev. Stat. Ann. § 38-35-109 (West 2018).

[28]   *ALH Holding Co. v. Bank of Telluride*, 18 P.3d 742, 744 (Colo. 2000) (*en banc*) (emphasis added).

10

purchaser to rely on the condition of title as it appears of record.'"[29] "[P]roper recording

of documents provides constructive notice of interests affecting title."[30] "As a race-notice

state, . . . Colorado protects [bona fide purchasers] who acquire an interest in property

without notice of a prior unrecorded deed or encumbrance on the same property."[31]

Under Colorado law, a purchaser of an interest in real property from the Debtor is

charged with searching the chain of title in the grantor and grantee indices.[32] Colorado

law requires each county clerk and recorder in the State to keep a grantor index and a

grantee index of documents concerning or affecting real estate.[33] Documents within the

chain of title in a sale or lien transaction are documents that can be found searching these

indices with reasonable diligence to find transfers and encumbrances linked to prior and

subsequent transfers or encumbrances.[34] However, to search the chain of title, the

---

[29]     *Nile Valley*, 813 P.2d at 851 (quoting *Grynberg v. City of Northglenn*, 739 P.2d 230, 238 (Colo. 1987)).

[30]     *Collins v. Scott*, 943 P.2d 20, 22 (Colo. App. 1996) (citing *Nile Valley*, 813 P.2d 849).

[31]     *Hill v. Taylor (In re Taylor)*, 422 B.R. 270, 273 (Bankr. D. Colo. 2009) (citing *Guar. Bank & Tr. Co. v. LaSalle Nat. Bank Ass'n*, 111 P.3d 521, 523 (Colo. App. 2004)).

[32]     *LaSalle Nat. Bank*, 111 P.3d at 523 ("[P]roper recording of an instrument provides constructive notice to all those claiming under the same chain of title." (citing *Collins*, 943 P.2d 20)); *Adelson v. Bd. of Cty. Comm'rs of Pitkin Cty.*, 875 P.2d 1387, 1389 (Colo. App. 1993) ("Constructive notice of what is in documents of record and included in the purchaser's chain of title will be charged against the purchaser.").

[33]     Colo. Rev. Stat. Ann. § 30-10-408 (West 2018).

[34]     *See generally* Edward H. Rabin, et al., *Fundamentals of Modern Property Law* at 1053-55 (5th ed.) and 5 H. Tiffany, *The Law of Real Property*, § 1265, pp. 21-23 (1939).

searcher is required to search the records as against each prior owner of the property only from the time such prior owner actually acquired the title interest being searched through the date of recordation of the transaction that transferred the interest from the owner.[35] A conveyance recorded after the record title reflects that the transferor had already parted with title is not within the chain of title because a searcher has the right to assume that a party who has parted with record title will make no further conveyances of the property.[36]

The recordation of the quitclaim deed from the Debtor to the Family Trust on February 4, 2013 caused the record title to reflect that the Debtor had parted with title to the Property. The Deed of Trust, recorded after the recordation of the quitclaim deed from the Debtor to the Family Trust, and, therefore, after Debtor had parted with record title, was not within the chain of title. A searcher exercising reasonable diligence ordinarily would have the right to assume that the Debtor, having parted with record title, would make no further conveyances or encumbrances of the Property.

But that does not end our inquiry. Documents outside the chain of title provide constructive notice of interests affecting real property if "a possible irregularity appears in the record which indicates the existence of some outside interest by which the title may

---

[35]    *See Collins*, 943 P.2d at 22 (quoting 11 *Thompson on Real Property*, § 92.07(d) (D. Thomas ed. 1994)).

[36]    5 H. Tiffany, *The Law of Real Property*, § 1268, p. 26 (1939).

be affected. In such cases, a purchaser is bound to investigate and is charged with knowledge of the facts to which the investigation would have led."[37]

Here, if a bona fide purchaser from the Debtor after the recordation of the Deed of Trust had searched the grantor-grantee index for the Property under the Debtor's name, the bona fide purchaser would have found the quitclaim deed from the Debtor to the Family Trust. The Chapter 7 Trustee argues that the quitclaim deed does not contain any irregularities indicating the existence of an interest in the Property outside the chain of title and therefore triggered no duty on the part of a purchaser from the Debtor to investigate. But the existence of the quitclaim deed in the chain of title itself is an irregularity viewed from the standpoint of a purchaser from the Debtor. The quitclaim deed shows the Debtor had transferred the Property to the Family Trust, which suggests the Debtor could not still convey good title to the Property. A bona fide purchaser from the Debtor, exercising reasonable diligence, after learning from a search within the chain of title that the Debtor had already parted with record title, would have continued to search the grantor-grantee index under the name of the Debtor for transactions affecting the Property after recordation of the quitclaim deed to the Family Trust. That search would have disclosed the Deed of Trust.

The Chapter 7 Trustee argues the Deed of Trust is incapable of providing notice to a subsequent purchaser from the Debtor because the Deed of Trust is a "wild deed," or

---

[37] *Collins*, 943 P.2d at 22. *Accord Owens v. Tergeson*, 363 P.3d 826, 837 (Colo. App. 2015).

one outside the chain of title. None of the cases the Chapter 7 Trustee cites in support of this argument involve a possible irregularity appearing in the chain of title which would indicate the existence of some outside interest by which the title may be affected.[38]

Having constructive notice of the Deed of Trust, no bona fide purchaser from the Debtor could obtain superior title to the lien created by the Deed of Trust after March 4, 2013. Therefore, under § 547(e)(1)(A), the transfer was perfected on March 4, 2013 and, under § 547(e)(2)(B), the transfer occurred for preference purposes on that date. Since March 4, 2013 is well outside either preference period specified in § 547(b)(4), the transfer of an interest in the Property by recordation of the Deed of Trust does not constitute an avoidable preferential transfer under § 547(b).

We reach this conclusion regardless of the nature of the Family Trust. We would reach the same result even if the Family Trust had not been a self-settled revocable trust created by the Debtor. Had the Debtor sold the Property to an unrelated third party after March 4, 2013, the third party still would have constructive notice of the Deed of Trust.

---

[38] The Chapter 7 Trustee cites *Alpine Bank v. Moreno (In re Moreno)*, 293 B.R. 777 (Bankr. D. Colo. 2003 (holding execution of deed of trust as manager of corporation did not perfect encumbrance of real property owned by manager individually); *GMAC Mortg. Corp. v. PWI Grp.*, 155 P.3d 556 (Colo. App. 2006) (holding grantor of deed of trust that had no record interest in property referenced in deed of trust was a wild deed outside the chain of title); *Nile Valley Fed. Sav. & Loan Ass'n v. Sec. Title Guarantee Corp. of Baltimore*, 813 P.2d 849, 852 (Colo. App. 1991) (holding deeds of trust recorded in the names of individuals of a general partnership did not perfect a security interest).

*(2) Bona fide purchasers for value from the Debtor's transferee*

The Chapter 7 Trustee argues that a buyer of the Property from the Family Trust would not discover the Deed of Trust because it is outside the Family Trust's chain of title, having been recorded after the Family Trust took title. The Chapter 7 Trustee strongly urges that if Colorado law is construed so that a bona fide purchaser from the Family Trust would take title subject to an unknown lien outside the chain of title, it would have a chilling effect on real estate lending in Colorado because it would effectively make it impossible to insure title.

The time of transfer for preference purposes, however, is predicated on whether "a bona fide purchaser . . . *from the debtor* . . . cannot acquire an interest that is superior to the interest of the transferee."[39] It is immaterial to the analysis under § 547(e) whether a bona fide purchaser *from the Family Trust* could acquire an interest that is superior to the interest of Edmund and Jann Cates under the Deed of Trust because § 547(e)(1)(A) does not require us to consider whether a purchaser from the Debtor's transferee could locate an encumbrance. We also note that under § 550(b) a transferee from a debtor who takes for value, in good faith and without knowledge of the voidablity of a transfer is protected, as are the immediate and mediate good faith transferees of the immediate transferee from the debtor.[40]

---

[39]     11 U.S.C. § 547(e)(1)(A) (emphasis added).

[40]     11 U.S.C. § 550(b).

### b. Application of Section 547(e)(3)

Subsection (3) of § 547(e), which provides that for purposes of § 547(e), "a transfer is not made until the debtor has acquired rights in the property transferred," does not alter our conclusion that the transfer occurred on March 4, 2013 when Edmond and Jann Cates recorded the Deed of Trust, at a time when the Family Trust, not the Debtor, held record title to the Property.

Analyzing whether a transfer was made within the preference period is a three-step process under § 547(e). First, the Court determines whether there has been an actual transfer of an interest in property effective between the transferor and the transferee.[41] Second, the Court must determine under § 547(e)(2) whether the transfer is deemed to have been made within the applicable preference period, which depends on when the actual transfer of an interest in the property was perfected.[42] Third, the Court determines

---

[41] 11 U.S.C. § 101(54) (defining "transfer"). *See also Karim v. Bayview Loan Servicing, LLC (In re Karim)*, 582 B.R. 193, 198 (Bankr. N.D. Ill. 2018) (describing how the court determines whether and when there has been a transfer for preferential transfer purposes).

[42] For purposes of determining whether the transfer occurred within the applicable preference period, 11 U.S.C. § 547(e)(2) provides that a transfer is made either (A) at the time the transfer takes effect between the transferor and transferee if such transfer is perfected at or within 30 days after such time, (B) at the time the transfer is perfected, if the transfer that takes effect between the transferor and transferee is perfected after 30 days of such time, or (C) otherwise, immediately before commencement of the bankruptcy case. *See* subsections (A), (B), and (C) of § 547(e)(2), respectively.

16

whether § 547(e)(3) alters the deemed transfer date under § 547(e)(2). The deemed

transfer date is the transfer date for preferential transfer purposes.[43]

As discussed above, the actual transfer date between the Debtor and Edmund and

Jann Cates is October 3, 2012 and the deemed transfer date under § 547(e)(2) and

Colorado law is March 4, 2013. We now turn to whether § 547(e)(3) alters the deemed

transfer date under § 547(e)(2).

Section 547(e)(3) provides that "a transfer is not made until the debtor acquires

rights in the property transferred." However, § 547(e)(3) does not require that the debtor

had rights in the property at the time the lien was *perfected*. Instead, § 547(e)(3) means

that a transfer in the form of a grant of lien against property cannot occur before the

debtor acquires an interest in the specific item of encumbered property.[44] In other words,

for purposes of determining whether a transfer was made within the applicable preference

period, the transfer cannot occur with respect to future property the debtor will acquire

before the debtor has actually acquired the property. Section 547(e)(3) was intended by

Congress to overrule pre-Bankruptcy Code cases which held that a transfer occurred with

---

[43]    *See Karim,* 582 B.R. at 198 ("547(e) makes the concept of 'perfection' of the lien relevant to determining when a transfer of property between the parties is *deemed* to have occurred for purposes of pinpointing when a transfer happened under the preference avoidance provisions of the Bankruptcy Code.").

[44]    *See TOUSA, Inc. v. Citicorp N. Am., Inc. (In re TOUSA, Inc.)*, 406 B.R. 421, 429 (Bankr. S.D. Fla. 2009) (under § 547(e)(3) a transfer, in the form of a lien granted outside the preference period against after acquired property, does not occur for purposes of determining whether the transfer occurred within the applicable preference period, until the debtor has acquired rights in the specific items of collateral so the lien attaches to specific property).

respect to liens granted in after-acquired property, such as after-acquired accounts receivable, when the lien was granted.[45]

With respect to the lien created by the Deed of Trust, under § 547(e)(3) the transfer will not be deemed made under § 547(e)(2) for preference purposes until the Debtor has acquired rights in the specific Property encumbered by the Deed of Trust sufficient for the lien to attach to that specific property.[46] Here, when the Debtor granted the Deed of Trust, the Property was not after-acquired property, the Debtor already had rights in the Property, and the lien attached to the Property. Thus, § 547(e)(3) does not change the deemed transfer date under § 547(e)(2), March 4, 2013, even though the Deed of Trust was later recorded at a time when the Family Trust held record title to the Property. Because the Debtor had rights in the Property on the date she granted the Deed of Trust, the lien created by the Deed of Trust attached to the Property on the date the Debtor executed the Deed of Trust in favor of Edmond and Jann Cates. The recording date, March 4, 2013, is the perfection date, the deemed transfer date under § 547(e)(2)(B), and the applicable date of transfer for determining whether the transfer is an avoidable preference under § 547.

---

[45]     *Cox v. Gen. Elec. Credit Corp., (In re Cox)*, 10 B.R. 268, 271 (Bankr. D. Md. 1981); 5 *Collier on Bankruptcy* ¶ 547.05[1][d] (Richard Levin & Henry J. Sommer eds, 16th ed.).

[46]     Section 547(e) uses the term transfer in different ways. Section 547(e)(2) expressly recognizes that a transfer may be perfected at or after the transfer takes effect between the transferor and transferee. The transfer is deemed to have occurred at one of three different times, for purposes of determining whether the transfer occurred within the preference period, depending on the date of perfection of the transfer.

### c. The Chapter 7 Trustee's remaining arguments

The Chapter 7 Trustee raises several other arguments in his brief, asserting the bankruptcy court erred in its application of the Colorado case *Pandy v. Independent Bank*[47] and in its consideration of Arizona law.[48] We need not address either of these arguments. First, for the reasons stated above, pursuant to § 547(e)(1) and Colorado's race-notice statute, any bona fide purchaser of the Property from the Debtor after March 3, 2013 would have had constructive notice of the Deed of Trust. The fact that the Debtor transferred the Property to a revocable self-settled trust before the Deed of Trust was recorded is irrelevant for preferential transfer purposes because the lien of the Deed of Trust attached at the time the Debtor granted the Deed of Trust. Because "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the [trial] court or even presented to us on appeal,"[49] we need not consider the bankruptcy court's conclusion that under *Pandy* the Debtor retained the "functional equivalent of ownership" of the Property titled in the Family Trust's name thereby

---

[47]      372 P.3d 1047 (Colo. 2016) (determining a judgment lien attached to a debtor's equitable interest in property held in a self-settled revocable living family trust).

[48]      The Debtor created the Family Trust under Arizona law; therefore, the bankruptcy court considered whether to apply Arizona law, ultimately concluding it reached the same result under both Colorado and Arizona law. Summary Judgment Order at 13, *in* Appellant's App. at 163.

[49]      *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (first citing *United States v. Davis*, 339 F.3d 1223, 1227 (10th Cir. 2003), and then citing *Griess v. State of Colo.*, 841 F.2d 1042, 1047 (10th Cir. 1988)).

permitting perfection under Colorado law at a time the Debtor was not the record owner.[50]

Furthermore, because the Court need not consider the impact of the quitclaim deed from the Debtor to the Family Trust, Arizona trust law is also irrelevant and does not affect the outcome. Regardless, the bankruptcy court could "not conclude a different result is reached" by application of Arizona law and we see no error in this conclusion.[51]

Finally, the Chapter 7 Trustee argues the Tenth Circuit case *In re Bryan*[52] has persuasive effect in this matter. In *Bryan*, the Tenth Circuit held the recorded judgment lien did not attach to the debtor's equitable interest in the spendthrift trust's assets. Under Colorado law, judgment liens do not attach to real property until properly recorded and attach to all property owned at the time of or acquired after recording. By contrast, the Deed of Trust is a consensual lien and the Debtor owned the Property in fee simple when she granted the Deed of Trust. The lien created by the Deed of Trust attached to the Property when it was granted, even though the lien was perfected at a later time, when the Deed of Trust was recorded. Thus, we find *Bryan* inapplicable.

## IV.    Conclusion

The record before us supports the conclusion that a bona fide purchaser of the Property from the Debtor after March 4, 2013 would have had constructive notice of the

---

50      Summary Judgment Order at 12, *in* Appellant's App. at 162.

51      *Id.* at 13, *in* Appellant's App. at 163.

52      *Clark v. Peters (In re Bryan)*, 547 F. App'x 892 (10th Cir. 2012).

Deed of Trust upon its recording on March 4, 2013. Accordingly, under Colorado law, a bona fide purchaser could not obtain superior title to Edmund and Jann Cates as of March 4, 2013. This means the grant of the Deed of Trust was perfected and the transfer for preference purposes occurred on March 4, 2013, the date the Deed of Trust was recorded. Because the transfer occurred outside of any applicable preference period, the Deed of Trust is not an avoidable preferential transfer. Accordingly, judgment of the bankruptcy court is AFFIRMED.